**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HENRY MCLEAN and EDWIN RIVERA, | 10 Civ. 3950 (DLC/GWG) |
| Plaintiffs, | (ECF CASE) |
| -against- | |
| GARAGE MANAGEMENT CORP., a New York corporation; GARAGE MANAGEMENT ASSOCIATES LLC, a Delaware limited liability company; CHAPMAN CONSULTING PAYROLL LLC, a New York limited liability company; CHAPMAN CONSULTING LLC, a New York limited liability company; and RICHARD M. CHAPMAN, Individually, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DENY FLSA SECTION 16(b) COLLECTIVE ACTION CERTIFICATION

LITTLER MENDELSON
A Professional Corporation
A. Michael Weber
Elias J. Kahn
900 Third Avenue
New York New York 10022
212.583.9600
Attorneys for Defendants

TABLE OF CONTENTS

PAGE

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   BRIEF PROCEDURAL HISTORY AND STATEMENT OF FACTS ............................. 2

III.  PLAINTIFFS HAVE NOT SHOWN THEY ARE SIMILARLY SITUATED
      UNDER SECTION 16(B) OF THE FLSA ............................................................ 2

      A.    The Applicable Standard for Collective Action Certification Under
            Section 16(b).......................................................................................... 2

      B.    Plaintiffs Are Not Similarly Situated Due to the Disparate Factual and
            Employment Settings of the Individual Plaintiffs and Because GMC's
            Defenses Will Be Individualized to Each Plaintiff................................ 3

            1.    Exemption Analysis ................................................................. 3

            2.    Analysis of Plaintiffs' Off-The-Clock Work Claim .................. 5

      C.    Fairness And Procedural Considerations Dictate That That This Case Not
            Proceed As A Collective Action ............................................................ 7

IV.   CONCLUSION........................................................................................... 9

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Diaz v. Electronics Boutique of Am., Inc.,*
  2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005)...........................................4, 5, 6, 9

*Eng-Hatcher v. Sprint Nextel Corp.,*
  2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009) ...........................................5

*Gallender v. Empire Fire & Marine Ins. Co.,*
  2007 U.S. Dist. LEXIS 7127 (S.D. Miss. Jan. 31, 2007)...........................................3

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
  268 F.R.D. 604 (N.D. Cal. 2010)...........................................8

*Johnson v. Big Lots Stores, Inc.,*
  561 F. Supp. 2d 567 (E.D. La. 2008)...........................................4, 7, 8

*King v. West Corp.,*
  2006 U.S. Dist. LEXIS 3926 (D. Neb. Jan. 13, 2006) ...........................................6

*Mike v. Safeco Ins. Co. of Am.,*
  274 F. Supp. 2d 216 (D. Conn. 2003) ...........................................4

*Mooney v. Aramco Servs., Co.,*
  54 F.3d 1207 (5th Cir. 1995) ...........................................2

*Morisky v. Public Serv. Elec. & Gas Co.,*
  111 F. Supp. 2d 493 (D. N.J. 2000) ...........................................4, 9

*Pfohl v. Farmers Ins. Group,*
  2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004)...........................................3, 7

*Proctor v. Allsups Convenience Stores, Inc.,*
  250 F.R.D. 278  (N.D. Tex. 2008) ...........................................6

*Smith v. T-Mobile USA, Inc.,*
  2007 U.S. Dist. LEXIS 60729 (C.D. Cal. Aug. 15, 2007) ...........................................9

*Thiessen v. GE Capital Corp.,*
  267 F.3d 1095 (10th Cir. 2001) ...........................................3, 7

**Other Authorities**

29 C.F.R. § 541.100 ...........................................3
29 C.F.R. § 541.106(a) ...........................................3
29 C.F.R. § 541.700 ...........................................3
29 C.F.R. § 541.700(b) ...........................................3
29 U.S.C. 216(b) ...........................................2

## I.   PRELIMINARY STATEMENT

Defendants, Garage Management Corp., Garage Management Associates LLC, Chapman Consulting Payroll LLC, Chapman Consulting LLC and Richard M. Chapman (collectively "GMC" or "Defendants"), by its attorneys Littler Mendelson, P.C., submit this Memorandum of Law in support of its motion to deny certification of this collective action pursuant to Section 16(b) ("Section 16(b)") of the Fair Labor Standards Act ("FLSA"). Section 16(b) requires that the Plaintiffs show they are "similarly situated" to potential opt-in Garage Managers. Plaintiffs have failed this demanding test.

Garage Managers are not entitled to overtime because they are exempt executive employees. Whether Garage Managers are exempt executive employees will require individualized analysis because Garage Managers have different job duties and the amount of time they spend on non-exempt and exempt duties also varies.

A second issue in this case is whether GMC compensated Garage Managers for the time they spent dropping the daily cash at a designated depot. GMC contends that it has done so. This defense is supported by the fact that several Garage Managers testified that they dropped off the daily cash during their shifts and that they were specifically told they may do so. There is no evidence of a uniform policy stating that Garage Managers had to drop off the daily cash after their shifts ended. Thus, on both their overtime and off-the-clock work claims, Plaintiffs cannot show they were similarly situated to other Garage Managers because they were subject to disparate factual and employment settings and their claims will be subject to various individualized defenses. Moreover, a collective action would not be fair or procedurally manageable because each opt-in Garage Manager would require an individual trial to properly determine whether exempt management work constituted his most important duties and whether he was compensated for the daily cash drop.

Accordingly, the Court should grant Defendants' motion to deny collective action certification pursuant to Section 16(b) of the FLSA.

## II.   BRIEF PROCEDURAL HISTORY AND STATEMENT OF FACTS

The procedural history and facts that are relevant to this Motion are set forth in GMC's *Memorandum of Law In Opposition To Plaintiffs' Motion For Fed. R. Civ. P. 23 Class Certification* ("Rule 23 Opp.") (filed on April 15, 2011).   To avoid redundancy, the procedural history and these facts are not repeated herein.

## III.   PLAINTIFFS HAVE NOT SHOWN THEY ARE SIMILARLY SITUATED UNDER SECTION 16(b) OF THE FLSA

### A.   The Applicable Standard for Collective Action Certification Under Section 16(b)

Section 16(b) of the FLSA permits a collective action by employees, but only if all such individuals are "similarly situated." 29 U.S.C. 216(b).  Federal courts commonly use a two-stage analysis to decide whether employees are similarly situated so that a case may proceed as an opt-in collective action.  *Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  At the first stage, the court decides whether to approve notice of the lawsuit to potential class members. *Id.* at 1213.   During the second stage, the court applies a heightened level scrutiny of whether employees are similarly situated; this analysis is usually considered after the parties have conducted discovery. *Id.* at 1214.  Under this heightened standard, courts focus on the following three factors:

> (1) [the] disparate factual and employment settings of the individual plaintiffs;
>
> (2) the various defenses available to [the] defendant which appear[ed] to be individual to each plaintiff; [and]
>
> (3) fairness and procedural considerations.

*Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447, at *9 (C.D. Cal. Mar. 1, 2004). Certification under this more demanding standard "is rarely granted." *Gallender v. Empire Fire & Marine Ins. Co.*, 2007 U.S. Dist. LEXIS 7127 (S.D. Miss. Jan. 31, 2007). As shown below, pursuant to this three-factor test, Plaintiffs cannot show they are similarly situated under Section 16(b) of the FLSA.

**B.    Plaintiffs Are Not Similarly Situated Due to the Disparate Factual and Employment Settings of the Individual Plaintiffs and Because GMC's Defenses Will Be Individualized to Each Plaintiff**

**1.    Exemption Analysis**

To show an employee is a bona fide executive under the FLSA, it is necessary to show:

> (1) Compensated on a salary basis at a rate of not less than $455 per week; (2) *Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;* (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100 (emphasis added.) The term "primary duty" means the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. An employee who spends more than 50 percent of his or her time on exempt work "will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b). The FLSA regulations expressly permit executive employees to concurrently perform non-exempt duties while they are supervising employees. 29 C.F.R. § 541.106(a).

Courts have consistently held that collective treatment is not appropriate in cases where it is necessary to determine whether plaintiffs are exempt because each individual plaintiff's day-to-day duties must be analyzed to determine whether they are subject to the exemption. *See, e.g., Diaz v. Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382 at *14 (W.D.N.Y. Oct.

13, 2005) (denying certification and stating "[a]lthough [putative collection action members] share the same job description, their responsibilities, in fact, may differ . . . making class treatment inappropriate"); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-221 (D. Conn. 2003) (stating that certification would not be "sensible" where determining exempt status would involve an "individual and fact-intensive analysis," which included a determination of how much time was spent on exempt tasks); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498-99 (D. N.J. 2000) (denying certification because exempt status would have to be determined on a "job-by-job, or more likely, an employee-by-employee basis"); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 586 (E.D. La. 2008) (refusing to certify collective action in part because "the 'representative' testimony [of the opt-in plaintiffs] is not representative of plaintiffs' experiences" because of the "variations in employment responsibilities.").

As in *Diaz*, *Mike*, *Morisky* and *Big Lots*, whether Garage Managers are exempt will require an individualized analysis.  The Garage Managers' testimony demonstrates that the named Plaintiff Garage Managers had different duties than Garage Managers at other garages. For example, named Plaintiff McLean specifically stated that he does not provide employee training and development, and that he is not responsible for communicat[ing] policies and procedures to garage staff and instruct accordingly," "maintain[ing] disciplinary standards, adherence to company rules and regulations in garage," and ["responsibility"] for garage staff projecting [a] positive courteous attitude; uniform policy adherence."  (*See* Rule 23 Opp., Statement of Facts).  However, Garage Managers at other garages stated that these managerial duties were part of their responsibility  *Id.*

Named Plaintiff Rivera testified that he had no input into scheduling the parking attendants' work. *Id.* However, fellow Garage Manager John Camidge testified he prepares the parking attendants' work schedules and he changes the schedules according to the way business is going. *Id.* Other Garage Managers stated that they performed scheduling as one of their managerial duties as well. *Id.*

Not only do Garage Managers' duties differ, but there is also a significant variation in the amount of time Garage Managers their exempt managerial duties and non-exempt parking duties. Multiple Garage Managers testified that the spend as much as 70-95% of their time on managerial duties, while others stated they spend about 40% of their time on non-exempt parking duties. *Id.* Furthermore, some Garage Managers testified that even while performing manual work, they concurrently supervised employees. *Id.*

Whether Garage Managers are exempt executive employees will therefore require an individualized analysis of each Garage Manager' daily duties and the amount of time spent on, and the relative importance of, exempt versus non-exempt work. Thus, Plaintiffs cannot demonstrate they are similarly situated under Section 16(b) of the FLSA because of the disparate facts and employment settings concerning their exempt status and because GMC's exemption defenses will be individualized to each plaintiff's circumstances.

### 2.    Analysis of Plaintiffs' Off-The-Clock Work Claim

Courts have also consistently denied collective action certification where it is necessary to determine whether each plaintiff in fact worked off the clock or whether or not each plaintiff was subject to a policy dictating that they work off the clock. *See, e.g.*, *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 U.S. Dist. LEXIS 127262, at *15 (S.D.N.Y. Nov. 13, 2009) (denying certification because named plaintiff could not show her employer had a common policy that employees had to work unpaid overtime); *Diaz v. Electronics Boutique of Am., Inc.*, 2005 U.S.

Dist. LEXIS 30382 at *16 (W.D.N.Y. Oct. 13, 2005) (refusing to certify off-the-clock work claims because they were "too individualized to warrant collective action treatment"); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 282 (N.D. Tex. 2008) (denying certification of off-the-clock work claim because there was no official policy that employees work off the clock and because some plaintiffs testified that they did not work off the clock). *See also King v. West Corp.*, 2006 U.S. Dist. LEXIS 3926, *46-47 (D. Neb. Jan. 13, 2006) (decertifying collective action in part because employer intended to offer individualized defenses regarding whether uncompensated work actually occurred, whether time spent performing the work was *de minimus* and whether plaintiffs had scheduling flexibility).

The instant case is similar to *Eng-Hatcher, Diaz, Proctor* and *King*. Many Garage Managers stated at deposition or in declarations that they were told that Garage Managers should leave early enough to drop off the cash before the end of the shift or to drop off the cash at an earlier point during the shift. (*See* Rule 23 Opp., Statement of Facts). Several Garage Managers stated at deposition or in declarations that they were paid for the time they spent dropping off the cash. *Id.* One Garage Manager said at deposition that he always dropped the cash off during the middle of his shift. *Id.* Two Garage Managers stated at deposition that the depot is located at their garage so they do not have to add time to their shift to travel to drop off the cash. *Id.* Three Garage Managers stated at deposition that they leave their garages early to drop off the cash before they ended their shift and that they were not on the clock when they made these drops. *Id.* Multiple non-opt-in Garage Managers have also sworn in declarations that they have always dropped off the daily cash during their shifts. *Id.* Furthermore, as in *King*, GMC intends to offer individualized defenses, including that Garage Managers did not in fact drop off the cash outside

of their shifts, the *de minimus* defense and that Garage Managers had scheduling flexibility in dropping off the cash.

Because several Garage Managers stated that they dropped off the cash during their work shifts and were compensated for this work, that there were varying ways in which they dropped the cash and that they were told by GMC to leave early enough to drop off the cash before the end of the shift (or to drop it off during an earlier point in the shift), Plaintiffs' off-the-clock work claim must be subjected to an individualized factual inquiry. Accordingly, the Court should not certify Plaintiffs' off-the-work clock claim because they cannot demonstrate they were similarly situated to other Garage Managers in connection to this claim.

### C.    Fairness And Procedural Considerations Dictate That That This Case Not Proceed As A Collective Action

The third factor in determining whether a collective action should be certified is "fairness and procedural considerations." *Pfohl*, 2004 U.S. Dist. LEXIS 6447, at *9 (C.D. Cal. Mar. 1, 2004). As explained below, a collective action in this case would not be fair or procedurally manageable.

Courts have held that collective actions should not be certified where litigating a collective action would be unwieldy for the court and/or a jury. *See, e.g., Thiessen*, 267 F.3d at 1105 (court should consider whether collective action would be particularly burdensome on a jury). A collective action is especially not fair or procedurally manageable where it is necessary to analyze individual claims of several plaintiffs in a single proceeding because the plaintiffs are not similarly situated and any ruling on the merits would be unfair to both sides. *Big Lots*, 561 F. Supp. 2d 567 at 588 (explaining that it would not be fair to proceed as a collective action where managers were potentially exempt executive employees because "the all or nothing posture of this case makes ruling on the merits fundamentally unfair to both sides").

This case is similar to *Big Lots*.  In *Big Lots*, the district court initially held that "similarly situated" under the FLSA did not mean "identically situated," and it therefore certified a collective action.  However, once the district court began trying the case, it found that "the 'representative' testimony [of the opt-in plaintiffs] is not representative of plaintiffs' experiences" because of the "variations in employment responsibilities."  *Big Lots*, 561 F. Supp. 2d at 579, 583.  The court noted:

> [Because of the difference in testimony regarding class member duties], Big Lots cannot provide a common defense to the claims of the class members by calling a handful of witnesses whose testimony strongly suggests that [the class members] are properly classified, because there are other witnesses who will testify to the contrary.  Big Lots best alternative is to pick the class apart, plaintiff by plaintiff, going into the day-to-day job duties of each of the plaintiffs to prove that these [class members] are properly classified as exempt.  That exercise is tantamount to conducting multiple individual trials on the merits and is the antithesis of a collective action.

*Id.* at 586.  *See also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604 at 612 (N.D. Cal. 2010) (noting that "representative testimony is typically only allowed in the unpaid overtime context to establish the number of hours employees worked and the amount they were paid, not whether a class of employees was exempt from the overtime laws' coverage"), *appeal dismissed sub nom. Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg. Overtime Pay Litig.)*, 2011 U.S. App. LEXIS 7266 (9th Cir. Apr. 8, 2011).  Based on these points, the court in *Big Lots* stated that it had "serious concerns about due process" of forcing an employer to rely upon representational proof to defend its position in the exemption context and held that the "facts [did] not justify collective treatment. . . ." *Id.* at 587-88.

As in *Big Lots*, given the disparity in duties between the named Plaintiffs and other Garage Managers and the need to address how each Garage Manager spends the majority of his work day and the relative importance of his exempt versus non-exempt duties, the Court will

have to examine the unique circumstances of individual Garage Managers and conduct a "mini-trial" for each one to determine whether his primary duty is exempt work.[1] *See also Morisky*, 111 F. Supp. 2d at 498-99 (because evaluation of claims would have to be made on an employee-by-employee basis, "litigating this case as a collective action would be anything but efficient").

Accordingly, the Court should not certify Plaintiffs' FLSA collective action because it would not be fair or procedurally manageable to do so.

## IV.   CONCLUSION

As set forth above, Plaintiffs have not satisfied their burden of demonstrating that Garage Managers are similarly situated for the purpose of certifying Plaintiffs' FLSA collective action. Accordingly, the Court should not certify Plaintiffs' collective action pursuant to Section 16(b) of the FLSA.

Date:   April 15, 2011
       New York, New York

/s/
A. Michael Weber
Elias J. Kahn
LITTLER MENDELSON
   A Professional Corporation
900 Third Avenue
New York, NY  10022.3298
212.583.9600

Attorneys for Defendants

---

[1] This point applies equally to Plaintiffs' off-the-clock claim.  The Court would have to examine each Garage Manager to determine whether he was told that he could leave work early enough to drop the cash before the end of his shift (or at any time during his shift) and whether each Garage Manager made the cash drop during his shift. *See, e.g., Diaz*, 2005 U.S. Dist. LEXIS 30382 at *17 (finding that proceeding collectively in off-the-clock case would be too burdensome to manage because claims and defenses would have to be made individually as to each plaintiff); *Smith v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 60729, at *24 (C.D. Cal. Aug. 15, 2007), *appeal dismissed*, 570 F.3d 1119 (9th Cir. 2009) (same).

## <u>CERTIFICATE OF SERVICE</u>

      I, A. Michael Weber, hereby certify that I electronically filed the **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DENY FLSA SECTION 16(b) COLLECTIVE ACTION CERTIFICATION,** with the Clerk of the District Court for the Southern District of New York using the CM/ECF system, which sent notification of such filing to attorney for Plaintiffs:

                        Stephen H. Kahn, Esq.
                        Kahn Opton, LLP
                        228 East 45th Street, 17th Floor
                        New York, NY 10017
                        Ph: 212-966-8686

                        Kahn Opton, LLP
                        One Parker Plaza
                        Fort Lee, NJ 07024
                        Ph: 201-947-9200
                        Fax: 201-402-6878

To his registered email address: skahn@kahnopton.com

                                    */s/ A. Michael Weber*_____
                                     A. Michael Weber

Date:  April 15, 2011