UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
HENRY MCLEAN and EDWIN RIVERA,

                Plaintiffs,

    -versus-

GARAGE MANAGEMENT CORP., a New York corporation;
GARAGE MANAGEMENT ASSOCIATES LLC, a Delaware
limited liability company; CHAPMAN CONSULTING
PAYROLL LLC, a New York limited liability company;
CHAPMAN CONSULTING LLC, a New York limited
liability company; and RICHARD M. CHAPMAN,
Individually,
        Defendants.
---------------------------------------------------------------x

10 Civ. 3950 (DLC)

STATEMENT OF
MATERIAL FACTS
PURSUANT TO
LOCAL RULE 56.1

        Plaintiffs, by their attorneys, in accordance with Local Civil Rule 56.1, state the following facts as to which there is no genuine issue to be tried:

A.     <u>Preliminary</u>[1]

1.     Defendants (collectively "GMC") operate approximately 68 parking garages in New York City and two garages in Hoboken, New Jersey. Cha 20, 132.

---

[1] The following exhibits are attached: Garage Manager deposition excerpts: Benci (BEN); Camidge (CAM); Cartegena (CAR); Cruz (CRU); Godet (GOD); McLean (MCL) with deposition exhibit; Palliant (PAL); Rivera (RIV); Sam (SAM); Toogood (TOO); Torres (TOR): and Veras (VER). GMC upper management and accountant deposition excerpts: Chapman (CHA) with deposition exhibits; Hamm (HAM); Kamm (KAM) with deposition exhibits; Sokol (SOK) with deposition exhibits; and Weinstein (WEI) with deposition exhibit. Deposition exhibits follow transcript excerpts under related index tabs. Transcript excerpts are in reduced size format; full size provided upon request. Volume 2 contents: Exhibit A, Amended Complaint; Exhibit B, Amended Answer to the Amended Complaint; Exhibits C- H, GMC Payroll Records for Garage Mangers ,May 2004 through April 2010,( Ex. C 5/2004-06/2006; Ex. D 7/2006/12/31/2006; Ex E 2007; Ex F 2008; Ex G 2009; Ex H 2010).

2.     Defendant Richard Chapman is the President and an owner (along with his children, his Chief Executive Officer, and the CEO's children) of the GMC parking garage business. Ham 13; Kam 23; Sok 24, 37.

3.     Chapman has the ultimate approval of any action taken in the GMC parking garage business. Kam 80; Sok 18.

4.     In the hierarchy of GMC's parking garage business, GMC's primary managers (or "Management Team" as defined below) are under Richard Chapman. Ham 6.

5.     Gordon Hamm is GMC's Chief Executive Officer. Ham 5.

6.     Joel Weinstein does not have a formal title at GMC, but is referred to as the Office Manager. Wei 8.

7.     Douglas Kamm was GMC's Director of Personnel from about 1986 to 2000. Subsequently, after a break in his GMC employment, he resumed his GMC employment without formal job title, but with administrative responsibilities. Kam 6,7.

8.     GMC's primary managers are Richard Chapman, Hamm, Weinstein and Kamm. (collectively, the "Management Team"). Cha 66.

9.     GMC operates its parking garage business through a series of more than 70 intertwined business entities including the following entities businesses (Cha 150; Wei 71; Sok 11-19; Sok Ex. 1):
   a. Entities that operate under the umbrella CFG Associates LLC;
   b. More than 60 limited liability corporations that own minimal assets other than leases to operate parking garages, all of which are directly or indirectly owned by CFG Associates LLC (Sok Ex. 1 "CFG Associates LLC tax return");
   c. About 18 other limited liability corporations and 5 corporations that are an additional layer of ownership of the above 60 limited liability corporations;
   d. GMA Management LLC which is owned by CFG Associates LLC and pays the Garage Managers;
   e. Approximately 30 additional entities which are owned by Chapman and his children. Sok 24;
   f. Chapman Consulting LLC which serves all, or most, of the business entities. Sok 39;
   g. CFG Associates LLC is owned by Chapman, Hamm and their children. Sok 20.

2

10.     The revenue from over 40 parking garages is paid, directly or indirectly, to CFG Associates LLC. Sok 21, 29.

11.     There is no consideration paid when monies are moved between CFG Associates LLC and the intertwined business entities. Sok 21, 29.

12.     There is substantial overlap in the business ownership of all of the GMC parking garage businesses. Sok 35.

13.     The GMC parking garage businesses all share a common business address (as opposed to the addresses of individual parking garages). Sok 35.

14.     GMC's annual gross volume of sales / revenues is greater than $500,000.00 annually. Exs. A and B, Amended Complaint and Amended Answer to Amended Complaint at ¶¶ 12; Sok Ex. 1 "CFG Associates LLC tax return."

B.      <u>Garage Manager Duties Generally</u>

15.     Plaintiffs are current and former Garage Managers employed in GMC parking garages. Exs. A and B, Amended Complaint and Amended Answer to Amended Complaint at ¶¶ 3,4.

16.     Garage Managers spend a significant part of each workday parking and shuttling cars in the parking garages. Riv 68 (runners or manger parks cars); Ben 79 (3-4 hours daily); Cam 55 (move 100 to couple of hundred cars each day); God 69 (4 hours daily); Pal 58 (25% of each workday); and Ver 13 (move 50-60 cars each day).

17.     Garage Mangers ticket cars and work the cash register. Riv 86; Ben 11; Tor 46-47.

18.     Other Garage Managers duties are identified in GMC's written job description. McL Ex. 3; Ben 23; Cam 15; Pai 24; Ver 23.

19.     Garage Managers punch a time clock. Riv 51; Cam 16; Cru 17; God 61; Tor 15.

20.     Garage Managers are regularly transferred from one garage to another. Cha 132.

C.      Garage Mangers Work More Than 40 Hours Weekly Without Overtime Wages

21.     Garage Managers are regularly scheduled to work 5 days each week and over 40 hours per week. Cam 10; Cha 53, 133; McL 25; Riv 107.

22.     Most Garage Managers are regularly scheduled to work about 50 hours per week. Cha 133; Wei 61.

23.     Prior to mid- April 2010 Garage Manager were not paid 1 ½ overtime wages for time worked over 40 hours per week. Kam 13; McL 40; Riv 109; Car 59-60; Cru 26; God 57; Sam 42; Ver 6, 10; Kam 13.

24.     Prior to mid- April 2010 Garage Managers were paid "straight time" wages for all hours worked including those in excess of 40 per week. Wei Ex. 1 ("GMC Payroll Authorization Forms," pages marked at lower right as GMC 0014060, 0014095).

25.     In about December 2009 GMC was served with a summons and complaint in Ramirez v. Garage Management Companies LLC, No. 09 Civ. 9329 (S.D.N.Y., filed 11/09/09) (Cote, J.) alleging, inter alia, that a "parking garage attendant with some managerial responsibilities" employed by GMC did not receive overtime pay as required by law. Cha 72; Cha Ex. 7," Ramirez Complaint" at ¶¶16, 20; Wei 98.

26.     During the first several months of 2010 members of the GMC Management Team began to discuss revising GMC's pay system for Garage Managers. Wei 58.

27.     In mid-April 2010, GMC commenced paying Garage Managers 1 ½ overtime wages for time worked over 40 hours per week. Cha 12, 35; Wei 29.

28.     GMC's motive for changing the compensation system for Garage Managers to include 1 ½ overtime pay was, among other things, Chapman and/or the Management Team's concern that the

4

system that existed before the change did not comply with the legal requirement to pay overtime pay. Cha 33.

    D.    Compensation System Pre-April 2010 – Hourly Pay Plus A Monthly Lump Sum, No Overtime Wages Paid

29. Before and after April 2011, Garage Managers have always had an hourly wage rate. Cha 127. See, GMC Payroll Records for Garage Mangers, May 2004 through April 2010,( Ex. C 5/2004-06/2006; Ex. D 7/2006/12/31/2006; Ex E 2007; Ex F 2008; Ex G 2009; Ex H 2010), passim.

30. Prior mid- April 2010, each pay period, Garage Managers were paid hourly pay at straight time rate for each work hour that they reported as work time. Car 14; Cha 9, 12,44 79, 131; Ham 30; Kam 10; McL 38; See, GMC Payroll Records for Garage Mangers, Exs., C, D, E, F, G, H, passim.

31. GMC paid Garage Managers on a weekly basis until about July 2006 when it switched to a biweekly pay period. Compare GMC Payroll Records for Garage Mangers, Ex. C (5/2004-06/2006) with Ex. D (7/2006/12/31/2006).

32. Prior to mid-April 2010, each pay period, the Garage Mangers received a paycheck. The gross amount of the check received each pay period (prior to payroll deductions) was equal to the product of the Garage Manager's individual hourly wage rate times the hours of work that the Garage Manager reported during that pay period. Cha 45, 124; Cha Ex.1; Wei 126; See, GMC Payroll Records for Garage Mangers, Exs. C, D, E, F, G, H, passim.

33. Prior to mid-April 2010, in addition to their pay each pay period, the GMC Garage Managers were paid by separate check a monthly lump sum amount which GMC called "Extra Compensation" or "EC." Car 14; Cha 12, 79, 131; Ham 30; Kam 10; McL 38; Cha Ex. 2. See also Cha Ex. 2, Plaintiff Rivera's 12/24/2008 pay stubs and check photocopies: a) for 110 hours at $12.50 or $1,375.00 gross; and b) EC pay stub for $600 gross.

34.  Prior to mid-April 2010, the wages that the Garage Managers regularly received each pay period were subject to deduction (including deduction of less than a full day's pay) because of the quantity of work performed.

   a.  See, See, GMC Payroll Records for Garage Mangers Exs. C, D, E, F, G, H, passim. Including, but not limited to:

   - Ex. C compare Aguirre 1/19/06 50 hours @ $11.60 = $580.00 with 1/26/06 46 hours @ $11.60 = $533.60;
   - Ex. C compare Fernandez 9/2/04 56 @ $9.20 = $515.20 with 9/9/04 39.5 hours @ $9.20 = $363.40;
   - Ex. C compare Rodriguez, Gerardo 12/2/04 47 hours @ $17.65 = $829.55 with 12/9/04 49 hours @ $17.65 = $864.85;
   - Ex. E compare Cartegena 4/5/07 100 hours $11.25 = $1,125.00 with 4/19/07 96 hours @ $11.25 = $1,080.00;
   - Ex. E compare Perez, F. 4/5/07 96.5 hours @ $12.25 = $1,182.13 with 4/19/07 94 hours @ $12.25 = $1,151.50;
   - Ex. F compare Cruz, S 2/7/08 101 hours @ $10.89 = $1,099.89 with 2/21/08 102 hours @ $10.89 = $1,110.78;
   - Ex. F compare Sampeur 6/12/08 101.5 hours @ $10.75 = $1,091.13 with 6/26/08 97 hours @ $10.75 = $1,042.75;
   - Ex. G compare Fraser 4/16/09 99 hours @ $21.66 = $2,144.34 with 4/30/09 97 hours @ $21.66 = $2,101.02;
   - Ex. G compare Romero, Jose 2/5/09 106.5 hours @ $11.50 = $1,224.75 with 2/19/09 104.5 hours @ $11.50 = $1,201.75;
   - Ex. H compare Jean Baptiste 2/4/10 106 hours @ $10.25 = $1,086.50 with 2/18/10 95 hours @ $10.25 = $973.75;
   - Ex. H compare Paillant 3/4/10 96 hours @ $15.19 = $1,458.24 with 3/18/10 100 hours @ $15.19 = $1,519.00.

   b.  See also, McL Ex. 1 ( paystub for Plaintiff McLean showing earnings based on hours worked for two pay period ).

   c.  See also, depositions of Garage Mangers: McL 21, 22, 26, 30 (paid hourly); Riv 35, 41, 107 (hourly rate and compensation varies by hours); Ben 52-56, 68 (when I work less, I earn less); Car 11, 13, 53, 56 (compensation varied by hours); God 53, 73-74 (no work means no wages; three hours off and I don't get paid); Pal 79 (less time, less pay); Sam 36 (wages vary by hours worked); Too 35 (hourly pay decreases if work shorter hours); Ver 32.

   d.  See also, depositions of GMC's Management Team members: Cha 124, (compensation equals the number of hours worked times the hourly wage rate; bi- weekly wages vary by hours worked); Wei, 28, 128, 129 (same); Ham 30, 31,32 (weekly pay goes up and down based upon the number of hours the garage manager reports he has worked); Kam 13 (when Garage Managers report that they work less than scheduled hours, their pay is reduced).

6

    e. See also, Cha Ex. 3, "GMC Policies and Procedures Manual" (under the headings "Time Card Procedure" and "Absenteeism/Lateness", pp. 5, 7)

35. Prior to mid-April 2010 the Garage Managers did not receive a predetermined amount each pay period. Id.

36. The Extra Compensation Bonus (EC payment) paid by GMC to its Garage Managers are monthly lump sum premiums paid without regard to the hours worked by the Garage Managers.

    a. See, GMC Payroll Records for Garage Mangers Exs., C, D, E, F, G, H, passim showing in the "EC" column regular monthly EC payments to Garage Mangers in amounts that change only occasionally and are unrelated to the hours reported during the month.

    b. See also, Cha. Ex. 2, Plaintiff Rivera EC paystub for $600 gross;

    c. See also, depositions of Garage Mangers:
- EC payment is received monthly, McL 31, 38, 44; Riv 26; Ben 46, 56; Car 14, 19, 27, 43;
- EC varies with garage assignment, McL 37; Cru 12; God 25; Too 35
- EC is unrelated to hours worked McL 37; Cam 36; Cru 27; Too 37; Ver 30

    d. See also depositions of GMC Management Team members:
- Garage managers reasonably expect to receive the same lump sum each month. Ch 24, 25,125-126; Wei 39, 41.
- EC changes because of merit increases, garage transfers, promotions, tenants removed from garages. Cha 18; Wei 39, 41, 43, 46, 53.
- EC changes with garage, garage size, employment seniority. Ch 18, 24; Wei 44

E.   Compensation System Post-April 2010 – Hourly Pay, Monthly Lump Sum Eliminated, 1 ½ Overtime Wages Begin

37. Beginning in mid-April 2010 GMC changed the compensation system for all Garage Managers. Cha 132; Wei 29.

38. Under the new compensation system, hourly pay rates were changed for all Garage Mangers were changed, and the EC payments were eliminated. GMC Payroll Records for Garage Mangers Ex. H for dates after April 15, 2011.

7

39. Beginning in mid-April 2010 for the first time, GMC paid their Garage Managers 1 ½ overtime wages for hours worked in excess of 40 in one week. GMC Payroll Records for Garage Mangers Ex. H for dates after April 15, 2011.

40. Under the post-April 2010 compensation system Garage Manager hourly wage rates were adjusted so that if the Garage Manager worked exactly the scheduled number of hours, his annual gross wages (straight time plus 1 ½ overtime) would equal the annual gross wages (straight time plus EC) that he would have earned for if he worked exactly the schedule number of hours under the pre-April 2010 payroll method. Cha 26, 33; Wei 27, 30.

41. GMC's equalization of pre- and post-April 2010 wages on an annual basis (assuming exactly the scheduled hours were worked) is illustrated by computations made on GMC payroll authorization forms. Wei Ex. 1, ("GMC Payroll Authorization Forms"( pages marked at lower right as GMC 0014031, 14058, 14087, 14086 in the rows labeled "Transfer" illustrating that annual compensation is equal under the old and new compensation systems if the Garage Manager worked exactly the hours scheduled.)

F. **U.S. Department of Labor Investigates GMC Pay Practices for Parking Attendants for Not Including Monthly EC Bonus as Part of Hourly Wage Rate for Overtime Purposes**

42. Parking Garage Attendants whose primary duty is to park and retrieve cars received hourly pay, plus 1 ½ overtime pay and monthly Extra Compensation pay. Wei 60; Kam 10.

43. In 1988 the U.S. Department of Labor, in response to a complaint by a Garage Attendant, investigated the overtime pay practices of GMC Garage Attendants. The complaint did not involve Garage Mangers. Kam 28, 39, 46.

44. By letter dated May 21, 1991 the U.S. DOL notified GMC Director of Personnel that an investigation conducted by the Department for the period December 1985 through December 1987

8

"disclosed that the firm failed to include bonus payments in computing the regular rate. As a result, . . . back wages were computed for 70 employees. Kam 32,40; Kam Ex. 5.

45.    In 1993 the U.S. DOL, in response to a second complaint by a Garage Attendants, investigated the overtime pay practices of GMC Garage Attendants for the period December 1990 to December 1992. Again, the complaint did not involve Garage Mangers. Kam 28, 39, 46. ("As I stated [regarding the two U.S. DOL investigations and investigations by the New York Department of Labor] garage managers were not involved.")

46.    As a consequence of the 1993 U.S. DOL investigation GMC agreed to pay back wages to 95 Garage Attendants. Kam 32,40. Kam Exs. 6 and 7.

47.    By letter dated August 23, 1993 the U.S. DOL advised GMC that because it had once again been found to have violated the FLSA for failure to pay overtime pay for hours worked in excess of 40 hours per week it was considering the imposition of civil penalties because of GMC's history of violations. Kam Ex 7.

48.    In late January 2011, as a result of a Freedom of Information Act request, GMC received a document from the U.S. DOL that appears to be an a handwritten internal DOL document concerning the investigation of the period 1985-1987. Kam Ex. 1.

49.    That report states in part: "FLSA sec. 13 (a) (1) – Reg 541.103 Blanket overtime exemption given to managers of all parking garages on the basis that they were paid a guaranteed salary x regardless of hours worked and their primary duty was management of the garage in which they worked. Review of managers payroll records indicated that they were paid for at least 40 hours even when they worked less than 40 hours. The managers supervised at least 2 full time employees." Id.

50.    During the 1985-1987 investigation GMC presented to the DOL regarding Garage Managers "minimal evidence. They investigated on their own." Kam 44.

9

G. <u>Daily Deposits At Central Depot Performed "Off-the-Clock" Without Compensation</u>

51. Garage Managers are required to travel from the garage in which they are employed to one of several central depots to drop off daily cash receipts and paperwork. This daily "drop-off" must be witnessed by an employee at the depot. Of the twelve employees deposed by GMC, nine testified that they punched-off of their time clocks and then traveled to the depot so that they were not paid for the drop offs. This uncompensated work took on average 15 to 30 minutes each day, five days a week. McL 72-5; Riv 99-100; Car 63-67; God 77-8; Pai 67; Sam 41; Too 25-7; 37; Tor 33, 38-9; Ver 16-17; 32. Two employees testified that they left work early to perform the drop-off. Ben 60; Cam 53. One employee testified that the drop-off took almost no time since the depot was in the garage in which he worked. Cru 22.

H. <u>Defendant Richard Chapman's Operation Control of the Garage Business and Workers</u>

52. Chapman's involvement in the operation of the garage business includes:

   a. Involvement in salary adjustments for Garage Managers. Cha 20, 78; Wei 42;
   b. Involvement in the revised Garage Manager compensation system which was implemented in mid-April 2010. Cha 32, 37; Wei 31;
   c. Involvement in change in the amount of Extra Compensation payments in cases potentially affecting about one-half of the Garage Managers. Cha 38;
   d. Involvement in decisions concerning overtime pay for Garage Managers Wei 58;
   e. Involvement in decisions concerning health care benefits for Garage Managers Cha 78;
   f. Involvement in decisions to terminate Garage Managers. Cha 78;
   g. Involvement in the decision to terminate the employment of named Plaintiff McLean. Cha 79;
   h. Involvement in promotion decisions affecting Garage Managers. Cha 85, 86;
   i. Involvement in discussions concerning job performance of Garage Managers Cha 89;
   j. Involvement in layoffs of Garage Managers. Cha 96;
   k. Involvement in assigning Garage Managers to particular parking garages. Cha 83
   l. Daily Meetings with the Management Team. Cha 87;
   m. Weekly meetings with the Field Supervisors who supervise the Garage Managers until approximately the Fall of 2011. Cha 88-89;
   n. Involvement in audits of payroll practices conducted by the federal and state Departments of Labor. Kam 50;
   o. Overall ultimate approval on any action taken in the company including wage changes, policy changes and correspondence. Kam 80, 81;
   p. Frequent decisions concerning compensation to be paid to Garage Managers. Wei 16;

q. Responsibility for ensuring that employees are receiving wages incompliance with law. Kam 95;
r. Closely worked with Director of Personnel on personnel issues. Kam 80;
s. Involvement in overall operations. Cha 76;
t. Drafted a letter dated May 21, 2010 which was distributed to Garage Managers stating that "GMC guarantees to pay you for whatever sum you would have received if you participated in the lawsuit brought by Henry McLean and Edwin Rivera." Cha 135, Cha Ex. 10.
u. Aware of attachment to May 21, 2010 letter that was distributed to Garage Managers stating "Date: _____ I want to withdraw from the suit against GMC [Garage Management Corp.] Please return the form I signed." Cha 139.

Dated: April 22, 2011

_____
Stephen H. Kahn
Kahn Opton, LLP
Attorney for Plaintiffs
228 East 45th Street
New York, New York 10017
(212) 966-8686

11