KAHN OPTON, LLP
Attorney for Plaintiffs
228 East 45th Street
New York, New York 10017
Telephone 212/966-8686
By: Stephen H. Kahn

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

HENRY MCLEAN and EDWIN RIVERA,

                Plaintiffs,

      -versus-

GARAGE MANAGEMENT CORP., a New York corporation;
GARAGE MANAGEMENT ASSOCIATES LLC, a Delaware
limited liability company; CHAPMAN CONSULTING
PAYROLL LLC, a New York limited liability company;
CHAPMAN CONSULTING LLC, a New York limited
liability company; and RICHARD M. CHAPMAN,
Individually,

         Defendants.
-----------------------------------------------------------------------x

10 Civ.  3950 (DLC)

 

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

  A.  Procedural Status.............................................................................................2

  B.  The GMC Companies; Its Business .................................................................3

  C.  Garage Manager Duties, Generally.................................................................4

  D.  Garage Mangers Work More Than 40 Hours Weekly
      Without Overtime Wages Until April 2010 .....................................................4

  E.  U.S. Department of Labor Investigates GMC Pay Practices for Parking Attendants
      for Not Including Monthly EC Bonus as Part of Hourly Wage Rate for Overtime Purposes .......7

  F.  Daily Deposits At Central Depot Performed "Off-the-Clock" Without Compensation2010........8

  G.  Defendant Richard Chapman's Operational Control of the Garage Business and Workers .........8

ARGUMENT ....................................................................................................................... 10

I       Summary Judgment Should Be Granted Because
        There Is No Issue As To Any Material Fact And Plaintiffs
        Are Entitled To Judgment As A Matter Of Law ...................................................... 10

II      The Garage Managers Are Entitled To The Protection
        Of Federal And State Wage And Hour Laws ......................................................... 12

III     The Garage Managers Are Entitled To Overtime Pay
        Under Federal And State Wage And Hour Laws ..................................................... 16

IV    The Garage Managers Hourly Wage rate Should Be
        Adjusted Upward To Include The Monthly Bonus ................................................. 20

V      The Garage Managers Are Entitled To Compensation
        For Time Spent Delivering Daily Receipts To The Central Depots......................... 21

VI    Defendant Richard Chapman Is An Employer Personally
        Liable For Federal And State Wage And Hour Violations...................................... 23

CONCLUSION................................................................................................................... 25

**Table of Authorities**

**Cases**

**Page**

Allen v. Webster Parish
  2001 WL 564122 (5th Cir. 2001)..................................................................... 21
Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)........................................................................................ 10
Anderson v. Mt. Clemens Pottery Co.,
  328 U.S. 680 (1946)........................................................................................ 25
Ansoumana v. Gristede's Operating Corp.,
  255 F.Supp.2d ................................................................................................. 26
Ayers v. SGS Control Services, Inc.,
  2007 WL 64632 (S.D.N.Y. 2007)................................................................... 22
Callier v. Superior Bldg. Services, Inc.,
  2010 WL 5625906 (E.D.N.Y. 2010). .............................................................. 24
Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)........................................................................................ 10
Chao v. Gotham Registry, Inc.,
  514 F.3d 280 (2d Cir.2008) ............................................................................ 17
Davis v. Lenox Hill Hosp.,
  2004 WL 1926087 (S.D.N.Y. 2004) (Cote, J.) ................................................ 13
Dooley v. Liberty Mutual Ins. Co.,
  369 F.Supp.2d 81 (D.Mass. 2005) .................................................................. 21
El Sayed v. Hilton Hotels Corp.,
  627 F.3d 931 (2d Cir. 2010) ........................................................................... 10
Farris v. County of Riverside
  667 F.Supp.2d 1151 (C.D.Cal. 2009) .............................................................. 21
Grochowski v. Phoenix Const.,
  318 F.3d 80 (2d Cir. 2003) ............................................................................. 24
Havey v. Homebound Mortgage, Inc.,
  547 F.3d 158 (2d Cir.2008) ............................................................................ 14
Herman v. RSR Sec. Servs. Ltd.,
  172 F.3d 132 (2d Cir.1999) ............................................................................ 26
Jiao v. Shi Ya Chen,
  2007 WL 4944767 ........................................................................................... 26
Martin v. Malcolm Pirnie, Inc.,
  949 F.2d 611 (2d Cir. 1991) ........................................................................... 12
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986)........................................................................................ 10
Parker v. Nutri System, Inc.,
  620 F. 3d 274 (3rd Cir. 2010)....................................................................... 18
Ramirez v. Garage Management Companies LLC,
  No. 09 Civ. 9329 (S.D.N.Y., filed 11/09/09) (Cote, J.) ............................... 6, 9
Rau v. Darling's Drug Store, Inc.
  388 F.Supp. 877 (D.C.Pa. 1975) .................................................................... 20

ii

## Table of Authorities
(continued)

Reich v. Southern New England Telecommunications Corp.,
121 F.3d 58 (2d Cir. 1997) .......................................................................................................... 17, 24, 25
Sampson v. Medisys Health Network Inc.
2011 WL 579155 (E.D.N.Y.,2011) ........................................................................................... 18
Solis v. Security Credit Systems, Inc.,
2011 WL 996792 (W.D.N.Y. 2011) .......................................................................................... 17
Torres v. Gristede's Operating Corp.,
2006 WL 2819730 (S.D.N.Y. 2006) (citing  29 C.F.R. §§ 541.100, 541.602) .......................... 13, 14
Tracy v. NVR, Inc.,
2009 W L 3153150 (W.D.N.Y. 2009) ......................................................................................... 26
Uphoff v. Elegant Bath, Ltd.,
176 F.3d 399 (C.A.7 (Ill.),1999) ................................................................................................ 21
Wright v. Aargo Security Services, Inc.,
2001 WL 91705 (S.D.N.Y. 2001) ............................................................................................... 15


**Other Authorities**

29 C.F.R. § 541.100 ....................................................................................................................... 13
29 C.F.R. § 541.118 ....................................................................................................................... 14, 15
29 C.F.R. § 541.602 ....................................................................................................................... 13
29 C.F.R § 778.107 ........................................................................................................................ 17, 22
29 C.F.R. § 778.109 ....................................................................................................................... 22
29 C.F.R.§ 778.110 ........................................................................................................................ 23
29 C.F.R. § 778.201 ....................................................................................................................... 19
29 C.F.R. § 778.207 ....................................................................................................................... 19
29 C.F.R. § 778.209 ....................................................................................................................... 23
29 C.F.R. § 778.310 ....................................................................................................................... 19
29 U.S.C. § 201et seq..................................................................................................................... passim
N.Y.C.C.R.R. § 142-3-2 ................................................................................................................ 12

PRELIMINARY STATEMENT

Plaintiffs submit this Memorandum of Law to support their Fed. R. Civ. P. 56 motion for partial summary judgment: 1) On liability for failure to pay 1 ½ overtime wages prior to mid-April 2010; 2) Establishing the correct method for computing the unpaid overtime wages; 3) On liability for failure to pay for all hours worked; and 4) Establishing that Defendant Richard Chapman is an "employer" personally liable for both the overtime wage claims and for the failure to pay for hours worked claims.

This is an action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and under New York State and local law wage and hour laws by two "Garage Managers" employed by the Defendants on behalf of themselves and a putative class for: 1) failure to pay 1 ½-overtime wages; and 2) failure to pay for all hours worked. The Garage Managers are non-salaried employees, paid on an hourly basis, all of whom, until April 2010, regularly worked more than 40 hours per week without overtime pay.  Additionally, the Garage Managers bring each day's cash receipts and paperwork to central depots after they punch out at the end of their work day without receiving pay for the time that they have worked.

Defendants (collectively "GMC") raise two main substantive defenses to the overtime claims: 1) GMC argues that Garage Managers are bona fide executives exempt from the overtime protection of federal and state law; and 2) GMC argues that it meets its obligation to pay 1 ½ overtime wages by paying each Garage Manager a monthly lump sum bonus (the "Extra Compensation or "EC" bonus) even though this bonus is unrelated to the hours that the Garage Managers work.  These two defenses should be rejected. They do not bar summary judgment.

- GMC, which bears the burden of proving the exemption, cannot show that its Garage Mangers are exempt executives because they are not paid on a "salary basis." Pay for Garage Managers is

not a predetermined salary, but rather hours worked multiplied by hourly rate. Garage Manager pay regularly varied with each pay period based upon hours worked. Payment on a salary basis is the sine qua non of exempt executive classification. GMC cannot establish that the Garage Managers are exempt employees.

- The monthly lump sum EC bonus does not satisfy the statutory overtime requirement. U.S. Department of Labor regulations specify that a lump sum premium which is paid without regard to the number of overtime hours worked does not qualify as an overtime pay even though the amount of money may exceed the sum owed on a per hour basis. GMC has already been warned by the U.S. DOL that its bonus practices were unlawful. On two separate occasions the U.S. DOL cited GMC for violating the FLSA overtime provisions by not properly accounting for bonuses in connection with overtime pay for GMC's Parking Attendants.

Payment of overtime wages for non-exempt employees and payment for all hours worked are bedrock requirements of federal and state wage and hour laws. Defendants are without any sound defense to these violations.[1] Summary judgment is appropriate.

## STATEMENT OF FACTS[2]

### A.   Procedural Status

Plaintiffs filed their complaint on May 12, 2010. GMC answered on June 4. On June 23, the case was reassigned from Judge Sullivan to this court. On August 11, the court authorized notice to potential FLSA "opt-in" plaintiffs. Defendants amended their answer on September 13 and 22. Approximately 47 out of a current workforce of about 60 Garage Managers have opted-in.

---

[1] Apparently GMC's sole defense to the failure to pay for all hours worked claim is to deny that its practice impacts all Garage Managers. The defense to the claim that Defendant Chapman is an "employer" is not known.
[2] The accompanying Plaintiffs' Statement of Material Facts ("SMF") provides greater detail.

On November 22, Defendants filed a motion to dismiss on the grounds of preemption and to compel arbitration. Before that motion was fully submitted, on January 3, 2011, Plaintiffs moved to amend their complaint by adding the claims for failure to pay for all time worked. After that motion was filed, GMC advised the Court that it did not oppose amendment to the complaint. On January 21, 2011GMC renewed its motion to dismiss the amended complaint and to compel arbitration. The Court, by Opinion and Order filed March 29 denied that motion. On April 1, GMC answered the Amended Complaint. GMC amended that answer on April 13.

Plaintiffs moved on March 22, 2011 for a Rule 23 order certifying the action as a class action for: 1) Plaintiffs' New York labor law claims for failure to pay 1 ½ times overtime wages for hours worked in excess of 40 hours per week; 2) Plaintiffs' New York Labor law claim for failure to pay for all hours worked; and 3) providing notice to the class in the form attached to the motion. Defendants responded to the motion on April 15. Plaintiffs' reply is due on April 29. Also on April 15, Defendants filed a motion to deny FLSA collective action certification.

Fact discovery closed on March 23. Prior to that time, Defendants deposed the named Plaintiffs and 10 members of the putative class. Plaintiffs deposed 5 GMC representatives.

B.     The GMC Companies; Its Business

GMC operates approximately 68 parking garages in New York City and two garages in Hoboken, New Jersey.  GMC conducts its garage management business through a series of intertwined business entities including all of the defendants herein and over 50 sub-entities listed on its tax return. SMF 1, 9-13.

Defendant Richard Chapman is the President and owner. Gordon Hamm is the Chief Executive Officer. Chapman and Hamm, along with their children, are the primaries owners of the

3

GMC parking garage business. Chapman has the ultimate approval of any action taken in the GMC parking garage business. SMF, 2-8.

C.     Garage Manager Duties, Generally

Plaintiffs are current and former GMC Garage Managers.  Garage Managers spend a significant part of each workday parking and shuttling cars in the parking garages. Garage Mangers ticket cars and work the cash register. Other Garage Managers duties, identified in GMC's written job description, include responsibility for the safety and condition of the garage premises, reporting to Field Supervisors on the rates charged by competing garages in the neighborhood, and functioning as lead men or working foreman alongside of the Parking Attendants. Garage Managers are regularly transferred from one garage to another. Garage Managers punch a time clock.  Each Garage Manager has an individual hourly rate of pay. They have always been paid as hourly employees. SMF 5-20, 29.

D.     Garage Mangers Work More Than 40 Hours Weekly
        Without Overtime Wages Until April 2010

Garage Managers are regularly scheduled to work 5 days and over 40 hours per week. Most Garage Managers are regularly scheduled to work about 50 hours per week. SMF 21, 22.

The overtime claims in this suit relate to the period before mid-April 2010.  Since mid-April 2010, GMC has been paying 1 ½ overtime wages to the Garage Managers, in part because of management's worry that the company was violating wage and hour laws. SMF 27, 39.

i. GMC's Compensation System Prior to April 2010

Prior to mid- April 2010 Garage Manager were not paid 1 ½ overtime wages for time worked over 40 hours per week. Garage Managers were paid "straight time" wages for all hours shown on their time cards regardless of whether they exceeded 40 in a week. Besides the hourly pay, GMC also paid a pre-determined amount as a monthly lump sum EC bonus. SMF 23, 24, 29-33.

The hourly pay was paid once each pay period in a separate paycheck.[3] The gross amount of the paycheck for hourly work (prior to payroll deductions) was equal to the product of the Garage Manager's individual hourly wage rate times the hours of work that the Garage Manager reported during that pay period. SMF 32.

Since the Garage Manager's pay was just the product of rate times hours, the wages that the General Managers received each pay period varied. The hourly wage component was subject to deduction (including deduction of less than a full day's pay) because of the quantity of work performed. The Garage Mangers did not receive a predetermined salary each week without regard to the days or hours worked. This is reflected in GMC's payroll records, in Garage Manager paystubs, and in the consistent testimony of the Garage Managers who were deposed. Additionally, GMC's key managers admitted during sworn depositions that Garage Manager hourly compensation equals the number of hours worked times the hourly wage rate; weekly pay goes up and down based upon the number of hours the Garage Manager reports he has worked; and that whenever a Garage Managers report that he has worked less than his scheduled hours, his pay is reduced. SMF 32-35.

GMC's practice of reducing Garage Manager compensation based upon hours worked is supported by its written policy that Garage Mangers are paid only for time recorded on their time cards and not for unjustified absences. SMF 34e.

The Extra Compensation bonus (EC payment) component of Garage Managers pay was a monthly lump sum premium paid without regard to the hours worked by the Garage Managers. Although the amount varied for each individual, every Garage Managers had a reasonable, fixed expectation that each month he would receive the same EC payment received in the prior month. EC amounts changed only occasionally based upon decisions made by the GMC Management Team after

---

[3] GMC switched from a weekly pay period to a bi-weekly pay period in about July 2006. SMF 31.

considering factors such as the Garage Manager's garage assignment, merit increases, garage transfers, promotions, tenants removed from garages, garage size, and employment seniority. Barring the unusual event of a change because of one of these type of factors, Garage Manager EC pay stayed the same. Most significantly, EC was unrelated to hours worked. SMF 36.

ii. GMC's Compensation System Since April 2010

GMC was sued by a Louis Ramirez, an employee identified as a Garage Manager on GMC's payroll for alleged overtime violations in November 2009. Ramirez v. Garage Management Companies LLC, No. 09 Civ. 9329 (S.D.N.Y., filed 11/09/09) (Cote, J.)[4] Shortly after GMC was served with the summons and complaint, GMC's key managers began to discuss revising GMC's pay system for Garage Managers. Beginning in mid-April 2010 GMC changed the compensation system for all Garage Managers. GMC's motive for changing the compensation system included worries by Chapman and/or the Management Team that the system that existed before the change did not comply with the legal requirement to pay overtime pay. Under the new compensation system, the Garage Managers continued to be hourly employees with individual hourly pay rates. However, for the first time, GMC began to pay its Garage Managers 1 ½ overtime wages for time worked over 40 hours per week. Additionally, the EC payments were eliminated. GMC precisely adjusted the hourly rate for each Garage Manager to avoid any additional wage cost from payment of overtime pay. Under the revised system, if the Garage Manager worked exactly the scheduled number of hours, his annual gross wages (straight time plus 1 ½ overtime) would equal the annual gross wages (straight time plus EC) that he would have earned for if he worked exactly the schedule number of hours under the pre-April 2010 payroll method. SMF 25-28, 37-41.

---

[4] That suit is stayed by Order dated July 14, 2010.

E.     U.S. Department of Labor Investigates GMC Pay Practices for Parking Attendants
       <u>for Not Including Monthly EC Bonus as Part of Hourly Wage Rate for Overtime Purposes</u>

Parking Garage Attendants whose primary duty is to park and retrieve cars received hourly

pay, plus 1 ½ overtime pay and monthly Extra Compensation pay. SMF 42.

In 1988 the U.S. Department of Labor, in response to a complaint by a Garage Attendant,

investigated the overtime pay practices of GMC Garage Attendants. The complaint did not involve

Garage Mangers. In its letter to GMC dated May 21, 1991 the U.S. DOL wrote that its investigation

for the period December 1985 through December 1987 "disclosed that the firm failed to include bonus

payments in computing the regular rate. As a result, . . . back wages were computed for 70 employees."

SMF 43, 44.

In 1993 the U.S. DOL, in response to a second complaint by a Garage Attendants, investigated

the overtime pay practices of GMC Garage Attendants for the period December 1990 to December

1992. Again, the complaint did not involve Garage Mangers. As a consequence of the 1993 U.S. DOL

investigation GMC agreed to pay back wages to 95 Garage Attendants. SMF  45,46.

The U.S. DOL advised GMC in an August 23, 1993 letter that because it had once again been

found to have violated the FLSA for failure to pay overtime pay for hours worked in excess of 40

hours per week it was considering the imposition of civil penalties. SMF 47.

In late January 2011, because of its Freedom of Information Act request, GMC received a

document from the U.S. DOL that appears to be an a handwritten internal DOL document concerning

the investigation of the period 1985-1987. That  handwritten report states in part: "Blanket overtime

exemption given to managers of all parking garages on the basis that they were paid a guaranteed

salary regardless of hours worked . . .  Review of managers payroll records indicated that they were

paid for at least 40 hours even when they worked less than 40 hours. GMC admitted that during the

7

1985-1987 investigation GMC presented to the DOL regarding Garage Managers "minimal evidence. They investigated on their own." SMF 48-50.

F.     Daily Deposits At Central Depot Performed "Off-the-Clock" Without Compensation

Garage Managers are required to travel from the garage in which they are employed to one of several central depots to drop off daily cash receipts and paperwork. This daily "drop-off" must be witnessed by an employee at the depot. Of the twelve employees deposed by GMC, nine testified that they punched-off of their time clocks and then traveled to the depot so that they were not paid for the drop offs. This uncompensated work lasted on average 15 to 30 minutes each day, five days a week. Two employees testified that they left work early to perform the drop-off. One employee testified that the drop-off took almost no time since the depot was in the garage in which he worked. These facts show that GMC does not pay its Garage Managers for all time worked. GMC time records do not accurately record the time worked by the Garage Managers. SMF 51.

G.     Defendant Richard Chapman's Operational Control of the Garage Business and Workers

Defendant Richard Chapman, President and partial owner of GMC, has the "ultimate approval" power at GMC including wage changes and policy changes. Chapman regularly exercises his substantial operational control. He has daily meetings with the key members of his management team. Until recently he held weekly meetings with the GMC Field Supervisors who directly supervise the Garage Managers. SMF 52.

Chapman has direct involvement in the key decisions affecting GMC's employees. He works closely with the GMC Director of Personnel. He is involved in decisions affecting the overall Garage Manager pay system including the April 2010 revision to the system. He is involved in adjusting the salary and Extra Compensation pay for individual Garage Managers. He plays a key role in making decisions concerning health care benefits for Garage Managers. He plays a part in decisions to

8

terminate Garage Managers. He participates in decisions involving Garage Manager promotions, performance evaluations, layoffs, and job assignments. He has overall responsibility for GMC's compliance, or lack thereof, with labor laws. He was involved in audits of GMC payroll practices conducted by the federal and state Departments of Labor. SMF 52.

Chapman attempted to discourage his Garage Managers from participating in this lawsuit. He drafted a letter dated May 21, 2010 which was distributed to Garage Managers stating that "GMC guarantees to pay you for whatever sum you would have received if you participated in the lawsuit brought by Henry McLean and Edwin Rivera." Attached to that letter was a one page form stating "Date: ___ I want to withdraw from the suit against GMC [Garage Management Corp.] Please return the form I signed." Chapman's letter and withdrawal form was handed to each Garage Manager by his Field Supervisor. SMF 52.

Chapman again directly involved himself in this action by deciding to terminate the employment of named Plaintiff McLean while this action was pending. SMF 52.

9

## ARGUMENT

### POINT I

#### SUMMARY JUDGMENT
#### SHOULD BE GRANTED
#### BECAUSE THERE IS NO ISSUE
#### AS TO ANY MATERIAL FACT
#### AND PLAINTIFFS ARE ENTITLED
#### TO JUDGMENT AS A MATTER
#### OF LAW

Summary judgment should be granted because "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a);  See, El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). The court must view all facts in the light most favorable to the non-moving party, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), but the party opposing the motion cannot create a genuine disputed fact merely by raising "metaphysical doubt" as to material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (only disputes over material facts that might affect the outcome of the suit preclude summary judgment).

Plaintiffs will show that:

- Garage Mangers are "salary basis" employees, so GMC cannot meet its burden to prove that they are exempt from the protection of federal and state overtime laws;

- GMC did not pay 1 ½ overtime wages to its Garage Managers prior to mid-April 2010;

- The monthly lump sum EC bonuses paid to Garage Managers without regard to the number of hours worked do not qualify as overtime wages even if the bonus amount exceeds the

overtime that is owed. The U.S. DOL had previously instructed GMC that its bonus payment practices violated FLSA overtime requirements;

- In determining the Garage Managers' hourly rate to be used for calculating their overtime pay, the hourly rate must be increased by apportioning back the monthly lump sum bonuses. The U.S. DOL had previously told GMC that this is so;

- GMC Garage Mangers routinely deliver the daily receipts to central depots after they punch out for the day without being paid for this task; and

- Defendant Richard Chapman is an "employer" within the meaning of the relevant statutes liable for Plaintiffs' claims because he exerts "operational control" over GMC's parking garage  business including its labor relations.

Given the absence of genuine issue of fact as to these issues, Plaintiffs will establish as a matter of law that they are entitled to partial summary judgment as sought by this motion

POINT II

THE GARAGE MANAGERS
ARE ENTITLED TO THE
PROTECTION OF
FEDERAL AND STATE
WAGE AND HOUR LAWS

A.    GMC Bears the Burden of Proving its Affirmative Defense that Garage Managers Are
Exempt "Executives"

The Garage Managers are entitled to the protection of the state and federal overtime laws

unless GMC can meet its burden to prove that the Garage Managers are exempt because they are

"employed in a bona fide executive . . . capacity . . . (as such terms are defined and delimited from

time to time by regulations of the Secretary[of Labor] . . ." FLSA §213(a)(1), 29 U.S.C. § 213(a)(1).

See also. N.Y.C.C.R.R. § 142-3-2  (adopting the FLSA exemption). GMC cannot meet this burden. Its

exemption defense should be rejected.

Because the FLSA is a remedial law, its exemptions are construed narrowly. The employer

bears the burden of proving that its employees fall within the exemption. Reiseck v. Universal

Communications of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010) [Citations omitted]. An employer

"must overcome the presumption" that its employees are protected by the FLSA.  Martin v. Malcolm

Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991).[5]

B.    The Garage Managers Are Not "Bona Fide Executives" Exempt from Overtime Protection

---

[5] For all purposes relevant to this motion, New York Labor Law is identical to the FLSA Reiseck, 591
F. 3d at 105 ("The NYLL, too, mandates overtime pay and applies the same exemptions as the
FLSA"); See, Zheng v. Liberty Apparel Co., 355 F.3d 61,78 (2d Cir. 2003);  Torres, 2006 WL
2819730, * 13; N.Y.C.R.R. § 142-2.2 and 142-2.16 (1 ½ overtime at the employees regular rate
subject only to the FLSA exemptions); § 142-2.16 (regular rate is total earnings per pay period divided
by hours worked within the period); 142-2.6 (employer must maintain detailed payroll records).

Under the FLSA and the NY Labor Law, an employer claiming the executive exemption must prove two elements: "the duties test" and "the salary basis test." Reiseck, 591 F.3d at 105 (court's analysis of pre-2004 regulations remains relevant); Malcolm Pirne, 949 F. 3d at 613; 29 C.F.R. § 541.100 "General rule for executive employee." See also, Torres v. Gristede's Operating Corp., 2006 WL 2819730, 6 (S.D.N.Y. 2006) (citing 29 C.F.R. §§ 541.100, 541.602). Here, the "salary basis test" cannot be met, so the Garage Managers are not exempt executives. See, Davis v. Lenox Hill Hosp., 2004 WL 1926087, *4 (S.D.N.Y. 2004) (Cote, J.) (employees were not exempt from FLSA because the employer paid on an hourly basis, not a salary).[6]

'Salary basis' is defined by regulation[7]:

(a) General rule. An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, **a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.** Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 CFR § 541.602 "Salary Basis" [Emphasis Added.][8]

---

[6] Because GMC cannot meet the salary test, it is not necessary to reach the "duties test." Material fact disputes make it impossible to resolve this test by summary judgment. However, GMC cannot prove the elements of the duties test either, See, 29 C.F.R. § 541.100.

[7] The Secretary of Labor's regulations have the force of law, and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute." Freeman v. Nat'l Broad, Co., Inc., 80 F.3d 78, 82 (2d Cir. 1996) (internal citations omitted); Chenensky v. New York Life Ins. Co., 2009 WL 4975237, 5 (S.D.N.Y. 2009); Amendola v. Bristol-Myers Squibb Co., 558 F.Supp.2d 459, 469 (S.D.N.Y. 2008).

[8] 29 CFR § 541.100(d) contains a cross-reference to the §541.602 definition. The current "salary basis" definition was adopted on August 23, 2004. It was closely based upon the prior definition at 29 CFR 541.118. See, 69 FR 22122, 22177 "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees." The above-quoted "General Rule" is substantively unchanged with only minor editing amendments.

The salary requirement is explained in <u>Havey v. Homebound Mortgage, Inc.</u>, 547 F.3d 158, 163 (2d Cir.2008):

> '[g]enerally, an employer that maintains the discretion to reduce an employee's compensation as a result of the employee's hours or the quality of the employee's work[ ] may not consider the employee to be paid on a salary basis.' However, 'exempt status will be denied only if there is either ... an actual practice of making ... deductions.', or, failing that, a 'clear and particularized policy-one which effectively communicates that deductions will be made in specified circumstances.' (internal quotations and citations omitted).

See also, <u>Malcolm Pirnie</u>, 949 F.2d at 615 ("an employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried employee"); ( collecting cases); 29 C.F.R. § 541.118(a); 29 C.F.R. § 541.602(a).  See also, <u>Torres</u>, 2006 WL 2819730, *6 (citing 29 C.F.R. § 541.602).

GMC cannot meet its burden of establishing the executive exemption. The Garage Managers did not receive a predetermined amount each pay period. Instead, GMC regularly reduced compensation for Garage Managers within a pay period based upon the hours worked within that pay period.  Garage Manager's gross pay each pay period was just hourly rate times hours reported. Wages regularly fluctuated (including deductions of less than a full day's pay) because of the number of hours worked. GMC's payroll records, Garage Manager paystubs, consistent deposition testimony of the Garage Managers and admissions by GMC Management Team during depositions proves an "actual practice" of reducing Garage Manager's compensation because of the hours worked.

GMC's practice of reducing Garage Manager compensation based upon hours worked is consistent with its written policy. "GMC Policies and Procedures Manual" provides that employees including Garage Managers are paid only for time recorded on their time cards and employees will be docked for unexcused absences.

GMC's recently filed "Memorandum of Law In Opposition To Plaintiffs' Motion For Fed. R. Civ. P. 23 Class Certification" at p. 3 points out that named Plaintiff Rivera referred to his compensation as a "salary." GMC omits mention of Rivera's statements that he was paid hourly.  More importantly, GMC ignores the reality of its pay practices and pins too many hopes on "what's in a name." The court in  Wright v. Aargo Security Services, Inc. , 2001 WL 91705, 8 (S.D.N.Y. 2001) unequivocally rejects reliance upon either the employer's subjective intent or the label that the employer utilizes  as a way to determine whether employees are "salary basis."

> The regulation governing the determination of whether an employee should be considered salaried speaks objectively in terms of the receipt of a 'predetermined amount' that is not 'subject to reduction' due to the quality or quantity of work. 29 CFR § 541.118. Neither it nor any regulation of which this Court is aware focuses on the nomenclature used to describe the employee or the category in which he is placed by the employer or its payroll records. The court goes on to explain that "[t]his is logical since if obtaining an exemption were as simple as [calling it 'salary'], many employers would merely label their employees salaried in order to avoid overtime requirements.

Id. at n. 5.

Finally, GMC's April 2011 revision to its Garage Managers compensation system belies any claim that the Garage Mangers were salaried employees. The new system continued individual hourly pay rates with the addition of 1 ½ overtime wages and the elimination of EC pay. The claim that GMC converted the Garage Managers from salaried employees to hourly employees so that it could begin paying overtime wages strains all belief.

The Garage Managers are not exempt employees because GMC paid them on an hourly basis, not a salary. GMC's Fourth Affirmative defense should be rejected.

15

POINT III

## THE GARAGE MANAGERS
## ARE ENTITLED TO
## OVERTIME PAY UNDER
## FEDERAL AND STATE
## WAGE AND HOUR LAWS

A.    GMC Fails to Pay 1 ½ Overtime Wages

The FLSA overtime requirement is well known - "[N]o employer shall employ any of his

employees ... for a workweek longer than forty [40] hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate not less than one and

one-half [1 1/2] times the regular rate at which he is employed."FLSA § 207(a), 29 U.S.C. § 207(a)(1).

See also, 29 C.F.R § 778.107 (general overtime standard is 1 ½ regular rate of pay).  A plaintiff

seeking overtime compensation under FLSA § 207(a)  has the initial burden to "produce sufficient

evidence to establish that the employees have in fact performed work for which they were improperly

compensated and produce sufficient evidence to show the amount and extent of that work . . ." Reich

v. Southern New England Telecommunications Corp., 121 F.3d 58, 67 (2d Cir. 1997) quoted in Solis

v. Security Credit Systems, Inc.,   2011 WL 996792, 4 (W.D.N.Y. 2011).  See, Chao v. Gotham

Registry, Inc., 514 F.3d 280 (2d Cir.2008) (employees receive overtime premium pay for hours

worked be in excess of forty);  Gorman v. Consolidated Edison Corp., 488 F.3d 586, 595-97 (2d

Cir.2007); Sampson v. Medisys Health Network Inc. 2011 WL 579155, 3 -4  (E.D.N.Y.,2011).

GMC does not deny that prior to mid-April 2010 it did not pay 1 ½ overtime premium pay to

the Garage Managers. Plaintiffs have satisfied their burden of proving a systemic overtime

compensation violation affecting all Garage Managers.

B.   Monthly Lump Sum "Extra Compensation" (EC) Bonus Payments
     Do Not Satisfy the Statutory Overtime Wages Requirements

The lump sum "Extra Compensation" Bonus paid each month to Garage Managers was not related to the hours worked. It was a fixed monthly amount set by GMC based upon employee longevity, the size of the garage at which the Garage Manger was stationed, and other factors.

GMC argues that it is relieved of its overtime obligation because its monthly EC bonus is generous and exceeds its overtime obligation. However, the FLSA requires the payment of overtime to nonexempt employees "regardless of the magnitude of each employee's monthly compensation." Malcolm Pirnie, 949 F.2d at 617.   GMC's self satisfaction with the generosity of its pay scale is not a defense to its FLSA overtime pay violations. Regardless of the level of GMC's wages, its failure to pay overtime runs counter to the FLSA policy of expanding job opportunities. Parker v. Nutri System, Inc., 620 F. 3d 274, 279 (3rd Cir. 2010); Defining and Delimiting the Exemptions, 69 Fed. Reg. 22123-24.

FLSA regulations explicitly rule that lump sum bonuses paid without regard to the hours worked do not satisfy the overtime obligation. 29 C.F.R. § 778.310 states in relevant part:

> A premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis.

The regulation explains:

> If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked. The Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work would thus be defeated. For

this reason, where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate and may not be credited against statutory overtime compensation due.

Id. Likewise 29 C.F.R. § 778.207 states in pertinent part:

> (a) ***The plain wording of the statute makes it clear that extra compensation provided by premium rates other than those described [ in FLSA Sections 7(e)(5), (6), and (7), which are inapplicable here] cannot be treated as overtime premiums. Wherever such other premiums are paid, they must be included in the employee's regular rate before statutory overtime compensation is computed; no part of such premiums may be credited toward statutory overtime pay.
> (b) Nonovertime premiums. *** lump sum premiums which are paid without regard to the number of hours worked are not overtime premiums and must be included in the regular rate.

See also, 29 C.F.R. § 778.201 (b) and (c) (No type of remuneration may be credited towards overtime payment except those described in §§7(e)(5), (6), and (7)).

Thus, GMC's monthly lump sum bonus payments which are not related to hours worked are precisely the type of payment which the regulations disallow as meeting the 1 ½ overtime requirement. GMC should know these rules because the U.S. Department of Labor has already instructed GMC that it may not use lump sum bonuses to meet the legal requirement to pay 1 ½ overtime pay. Twice the U.S. Department of Labor told GMC that it was violating the FLSA by not apportioning the EC bonus for purposes of calculating overtime pay for Parking Attendants. The U.S. DOL wrote to GMC on May 21, 1991 in connection with the GMC Parking Attendants "the firm failed to include bonus payments in computing the regular rate. As a result, back wages . . . were computed for 70 employees." If the bonuses should have been included in the employees regular rate to boost the employees' wages, then a fortiori, the bonuses cannot meet the requirement of payment of overtime wages.[9]

---

[9] In fact, as will be shown in Point III, infra, that just as the U.S. DOL wrote, the bonus amount must be allocated backwards to increase the Garage Managers hourly rate for purposes of calculating the unpaid overtime.

Rau v. Darling's Drug Store, Inc. 388 F.Supp. 877, 885 -886 (D.C.Pa. 1975) considered a compensation scheme that is similar to GMC's. There the employee was paid "extra compensation" in the form of a weekly cash payment. The employer argued that these weekly payments should be credited against the overtime awarded. The court rejected the employer's argument concluding that, since the weekly bonus fell under the 29 C.F.R. § 778.310 it "must be treated as a part of the compensation calculable within the regular rate, but are excludable from overtime compensation, and cannot, therefore, be charged as a credit against an award for the Plaintiff."

Other courts also reject lump sum payments that are not tied to hours worked as satisfying the overtime obligation. See, Allen v. Webster Parish 2001 WL 564122, 2 (5th Cir. 2001) (lump sum payments for working overtime shifts are not credited against obligation to pay overtime wages); Farris v. County of Riverside 667 F.Supp.2d 1151, 1163 -1164 (C.D.Cal. 2009) (12 hour lump sum holiday premium paid to sheriff deputies was not payment for overtime because it was not related to actual number of hours worked). See also, Dooley v. Liberty Mutual Ins. Co., 369 F.Supp.2d 81 (D.Mass. 2005)(lump per diem payment for working Saturdays without regard to the Saturday hours actually worked does not satisfy the overtime requirement).

In Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 405-06 (C.A.7 (Ill.),1999) the Seventh Circuit overruled the district court and held that the defendant company's use of cash payments and "other facilities" [use of cars etc.] as overtime pay must be a willful violation of the FLSA. The court found that the company's arguments, which are not dissimilar to GMC's arguments, were absurd:

> What did the Defendants believe about this act? Did they think that the cash payments and "other facilities" would serve as overtime compensation to the extent the Defendants deemed sufficient as measured by their own judgment, or did the Defendants believe that the cash payments and "other facilities" would serve as an equivalent measure of overtime compensation as that required by the statute?

GMC's claim that the Extra Compensation bonus payments should be accepted as a surrogate for statutory overtime wages should be rejected.

POINT IV

THE GARAGE MANAGERS'
HOURLY WAGE RATE
SHOULD BE ADJUSTED
UPWARD TO INCLUDE
THE MONTHLY EC BONUS
AMOUNTS

The correct formula for calculating overtime pay is a legal issue for the court to decide. Ayers v. SGS Control Services, Inc., 2007 WL 64632, *8 (S.D.N.Y. 2007). The multiplicand to the 1 ½ overtime rate is the employee's "regular rate." 29 C.F.R. § 778.107.   Generally, the "regular rate":

> is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

29 C.F.R. § 778.109

In the case of GMC, which pays a monthly lump sum bonus, that bonus amount must be included as part of the total remuneration. The pertinent regulation states:

> Hourly rate and bonus. If the employee receives, in addition to his earnings at the hourly rate[ of $6.00 per hour], a production bonus of $9.20, the regular hourly rate of pay is $6.20 an hour (46 hours at $6 yields $276; the addition of the $9.20 bonus makes a total of $285.20; this total divided by 46 hours yields a rate of $6.20). The employee is then entitled to be paid a total wage of $303.80 for 46 hours (46 hours at $6.20 plus 6 hours at $3.10, or 40 hours at $6.20 plus 6 hours at $9.30).

29 C.F.R.§ 778.110 (b)

If, as in the case of the GMC Extra Compensation bonus, payment is made on a monthly basis, then it must be apportioned back. 29 C.F.R. § 778.209 ("When the amount of the bonus can be

20

ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned."). The was the precise point made by the U.S. DOL in 1991 in connection with the GMC Parking Attendants, i.e. GMC "failed to include bonus payments in computing the regular rate."

The correct method for computing the regular rate each pay period is:

$$\frac{\text{Hourly Wages in Pay Period} + \text{EC Bonus Apportioned Back in Pay Period}}{\text{Hours Worked in the Pay Period}} = \text{Regular Rate}$$

The following example is based upon GMC payroll data for Employee Jose Aguirre for the weekly pay period ending 8/11/2005 (See, Ex. C, p. 1, GMC Payroll Records for Garage Mangers):

$$\frac{\$580.00\ (\text{Hourly Wage}) + \$333.33\ (\text{EC Bonus Apport'd Back})}{50\ (\text{Hours Worked in Pay Period})} = \$18.266\ \text{Regular Rate}$$

For the August 11, 2005 pay period, Mr. Aguirre should have been paid 40 hours at $18.266 plus 10 hours at 1 ½ , or $27.399, for a total of $1,004.63. He was paid only $913.33. He is owed $91.30 in unpaid overtime pay for that week (not including interest or penalties).[10]

POINT V

THE GARAGE MANAGERS
ARE ENTITLED TO
COMPENSATION FOR
TIME SPENT DELIVERING
DAILY RECEIPTS TO
THE CENTRAL DEPOTS

Garage Managers regularly worked "off-the-clock" without pay while delivering the day's receipts to central depots at the end of the day. Twelve Garage Managers, about 18% of the GMC

---

[10] This computation method must be adjusted for the time that GMC paid bi-weekly wages.

Garage Manager workforce, were deposed. Nine of those twelve testified that they spent 15 to 30 minutes each day, five days per week, performing the depot deliveries off-the-clock without pay. GMC is systematically failing to pay hourly wages for all time worked.  GMC has no accurate records of this uncompensated work time.

An employee bringing an FLSA action for unpaid overtime compensation 'has the burden of proving that he performed work for which he was not properly compensated. Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003).

> When accurate records or precise evidence of the hours worked do not exist, an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. . . . not all employees need testify in order to prove FLSA violations or recoup back-wages, the plaintiffs must present sufficient evidence . . . to make a reasonable inference as to the number of hours worked by the non-testifying employees.

Id. at 87-88.

See, also, Callier v. Superior Bldg. Services, Inc., 2010 WL 5625906, 2 (E.D.N.Y. 2010).  When, as in this case, numerous employees are underpaid, representative testimony, rather than the testimony of each individual is adequate. Reich v. Southern New England Telecommunications Corp., 128 F.3d 58, 67(2nd Cir. 1997). Here, the testimony of 9 employees, out of a workforce of 66 or fewer Garage Managers, is an adequate representation of GMC's failure to pay for the daily drop-off work.

This rule permitting employee testimony regarding hours worked in cases where time records are not accurate has stood the test of years for good reason–it prevents the employer from profiting from his own wrong doing.

> [W]here the employer's records are inaccurate or inadequate and [t]he solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result . . . would allow the employer to keep the benefits of an employee's labors without paying due compensation . . . In such a situation we hold that an employee has carried out his

22

burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946)

There is no genuine issue of disputed fact that GMC regularly fails to pay many of its Garage Managers for their "after hours" depot deliveries. Plaintiffs have satisfied their burden. They are entitled to partial summary judgment establishing GMC's liability for failure to pay for all hours worked. The calculation of damages, like the calculation of overtime damages, should be established after an inquest.

POINT VI

DEFENDANT RICHARD CHAPMAN<br>IS AN EMPLOYER<br>PERSONALLY LIABLE FOR<br>FEDERAL AND STATE<br>WAGE AND HOUR VIOLATIONS

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." FLSA § 203(d), 29 U.S.C. § 203(d).[11] Individual defendants, such as corporate officers, owners or shareholders, have been held to be employers under FLSA. Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir.1999) Jiao v. Shi Ya Chen, 2007 WL 4944767, *11; Ansoumana v. Gristede's Operating Corp., 255 F.Supp.2d 184, 193 (S.D.N.Y.2003). See also, Tracy v. NVR, Inc., 2009 W L 3153150, 3 -4 (W.D.N.Y. 2009)(collecting cases) Report

---

[11] Courts interpret the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." Jiao v. Shi Ya Chen, 2007 WL 4944767, *9  n. 12  (S.D.N.Y. 2007) (collecting cases).

23

adopted as modified 667 F. Supp 2d 244 (W.D.N.Y. 2009) (permitting amendment of complaint to include claim that corporate officer was an FLSA employer).

Herman v. RSR Sec. Servs. Ltd., 172 F.3d at 139 (2d Cir.1999) explains that that in determining whether an individual qualifies as an employer under the Act, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." The "economic realities test" considers four relevant factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. No one factor is dispositive, nor are the factors exclusive "[s]ince economic reality is determined based upon all the circumstances." Id.

Perhaps the pivotal issue as whether the individual has "operational control" over the business. Ansoumana v. Gristede's Operating Corp., 255 F.Supp.2d at 192 ("[o]fficers and owners of corporations may be deemed employers under the FLSA 'where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions' "). See also Tracy v. NVR, Inc., 2009 W L 3153150, * 3 -4.

Defendant Richard Chapman, as an owner of GMC, exerts substantial operational control of the parking garage business including direct involvement in the key decisions affecting GMC's Garage Managers. He worked closely with the GMC Director of Personnel. He was closely involved in GMC's April 2010 revision to the Garage Manager compensation system. He exercises control in employment issues affecting individual Garage Managers including decisions concerning health care benefits, decisions to terminate Garage Managers and decisions involving promotions, performance

evaluations, layoffs, and job assignments. He was involved in audits of GMC payroll practices conducted by the federal and state Departments of Labor. He wrote the May 21, 2010 letter guaranteeing payment to any Garage Manager who abandoned the present lawsuit. He helped to fire named Plaintiff McLean.

Chapman is and "employer" individually liable for GMC's wage and hour violations because of his controlling involvement in GMC's business including it labor relations.

CONCLUSION

Based upon the undisputed material facts, Plaintiffs have met the requirements for partial summary judgment: 1) On liability for failure to pay 1 ½ overtime wages; 2) Establishing that the correct method for computing the unpaid overtime wages; 3) On liability for failure to pay for all hours worked; and 4) Establishing  Defendant Richard Chapman is an "employer" responsible for GMC's wage and hour violations. It is respectfully submitted that partial summary judgment should be granted.

If Plaintiffs' summary judgment motion is granted, it will still leave for determination the question of damages and the question of whether Defendants' violations were "willful" within the meaning of state and federal law. Plaintiffs propose that a hearing be conducted on this limited set of issues

Respectfully submitted,

KAHN OPTON, LLP

By: Stephen H. Kahn
Attorney for Plaintiffs
228 East 45th Street, 17th Floor
New York, New York 10017
Telephone 212/966-8686

25