KAHN OPTON, LLP
Attorney for Plaintiffs
228 East 45th Street
New York, New York 10017
Telephone 212/966-8686
By: Stephen H. Kahn

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------x

HENRY MCLEAN and EDWIN RIVERA,

                   Plaintiffs,                                   10 Civ. 3950 (DLC)

       -versus-

GARAGE MANAGEMENT CORP., a New York corporation;
GARAGE MANAGEMENT ASSOCIATES LLC, a Delaware
limited liability company; CHAPMAN CONSULTING
PAYROLL LLC, a New York limited liability company;
CHAPMAN CONSULTING LLC, a New York limited
liability company; and RICHARD M. CHAPMAN,
Individually,
                 Defendants.

-----------------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## Table of Contents

PRELIMINARY STATEMENT .................................................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS.......................................................2

ARGUMENT ......................................................................................................................3

   I.     GMC Is Not Absolved By A Portal-To-Portal Act Good Faith Defense .............................3
   II.    GMC Fails To Meet Its Burden To Prove The Executive Exemption...................................5
   III.   GMC's "EC" Bonus Is Not Overtime Pay .............................................................................8
   IV.   GMC Failed To Pay For Time Spent Delivering Daily
         Cash Receipts To Central Depots ..........................................................................................9


CONCLUSION...................................................................................................................11

# Table of Authorities

Cases Cited:

Betancourt v. Maxim Healthcare Services, Inc.,
  2011 WL 1548964, 7 (N.D. Ill.  2011) ............................................................................ 2
Bongat v. Fairview Nursing Care Center, Inc.,
  341 F.Supp.2d 181 (E.D.N.Y. 2004) ............................................................................ 4
Cole v Farm Fresh Poultry, Inc.,
  824 F. 2d 923, 929  (11th Cir. 1987) ............................................................................ 3
Cusumano v. Maquipan Intern., Inc.,
  390 F.Supp.2d 1216 (M.D. Fla. 2005 )........................................................................ 4
De Leon-Granados v. Eller & Sons Trees, Inc.,
  581 F.Supp.2d 1295 (N.D. Ga. 2008)......................................................................... 3
Havey v. Homebound Mortgage, Inc.,
  547 F.3d 158 (2d Cir. 2008 .......................................................................................... 6
Hellmers v. Town of Vestal, N.Y.,
  969 F.Supp. 837, 845 (N.D.N.Y. 1997)..................................................................... 10
Martin v. Malcolm Pirnie, Inc.,
  949 F.2d 611 (2d Cir. 1991) cert. denied, 506 U.S. 905 (1992) ............................... 6
Murphy v. Miller Brewing Co,
  307 F.Supp. 829 (E.D.Wis. 1969)  affirmed 457 F.2d 221 ...................................... 4
Nelson v. Alabama Institute For Deaf and Blind,
  896 F.Supp. 1108 (N.D. Ala. 1995)............................................................................ 4
Pilkenton v. Appalachian Regional Hospitals, Inc.,
  336 F.Supp. 334 (W.D.Va. 1971) ............................................................................... 4
Reiseck v. Universal Communications of Miami, Inc.,
  591 F.3d 101 (2d Cir. 2010) ........................................................................................ 5
Semeria v. Gatto,
  75 N.Y.S.2d 140 (N.Y.Sup. 1947)............................................................................... 4
Spring v. Washington Glass Co.,
  153 F.Supp. 312 (W.D.Pa. 1957)................................................................................ 5
Wright v. Aargo Security Services, Inc.
  2001 WL 91705, 8 (S.D.N.Y. 2001)............................................................................ 6

Regulations Cited:

29 C.F.R. § 541.100(a) (2004)............................................................................................ 7
29 C.F.R. §541.102 ............................................................................................................. 7
29 C.F.R. §541.105 ............................................................................................................. 7
29 CFR § 541.602 ............................................................................................................... 6
29 C.F.R. §541.700 ............................................................................................................. 7

29 C.F.R. § 778.201 (b) and (c) ................................................................................................... 8
29 C.F.R. § 778.207 ..................................................................................................................... 8
29 C.F.R. § 778.310 ..................................................................................................................... 8
29 C.F.R. § 785.11 ..................................................................................................................... 10
29 C.F.R. § 785.13 ..................................................................................................................... 10
29 CFR § 790.13(a) ..................................................................................................................... 4
29 CFR § 790.18 ......................................................................................................................... 4
29 C.F.R. § 790.19(b) .................................................................................................................. 4

PRELIMINARY STATEMENT

Defendants ran the red light of wage and hour laws when they failed to pay 1 ½ overtime or wages for all hours worked. Rather than admit to this certain violation of the law, Defendants brazen it out by dishing a kitchen sink of bad arguments at the court. Defendants' (collectively "GMC") make three meritless claims to support their summary judgment motion.

1. The Portal-to-Portal Act's good faith defense relieves GMC of liability for its wage and hour violations because GMC relied in good faith on a U.S. Department of Labor (U.S. DOL) "administrative practice," viz., an oral statement allegedly made over 18 years ago on an unspecified date by a U.S. DOL investigator that the Garage Managers are "exempt" employees.

   → An oral statement by a minor U.S. DOL official does not meet the standards for a Portal-to-Portal Act good faith defense.

2. The Garage Managers are exempt executives because of their compensation level and job duties.

   → GMC cannot meet its burden of proving its exemption defense because an essential element of the exemption is missing - Garage Managers have never been paid on a "salary basis."

3. GMC satisfied the overtime requirement by paying its Garage Mangers a monthly lump sum "EC" bonus that was more generous than the statutory 1 ½ overtime requirement.

   → U.S. DOL regulations specify that lump sum premiums paid without regard to the number of overtime hours worked, like the EC bonus, do not qualify as overtime pay even if the bonus amount exceeds the statutory overtime. GMC has already been warned by the U.S. DOL that its bonus practices were unlawful.

4. GMC is not required to pay the Garage Managers for delivering daily cash receipts to the central depots after the normal work day because GMC "permitted" the Garage Manages to deliver the receipts during normal work hours.

→ An employer is not permitted to receive the benefits of its employees' work without paying for it regardless of whether the work is performed outside of normal hours. GMC was required to prevent this overtime work if it was not desired.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

The issues in GMC's Summary Judgment motion overlap with those in Plaintiffs' pending Partial Summary Judgment motion. The court is respectfully referred to Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment and Plaintiffs' Statement of Material Facts for a detailed procedural history and relevant statement of facts.

GMC supports its motion with the Declaration of former U.S. DOL Investigator Louis Vanegas. This witness was not disclosed to Plaintiffs until after the close of fact discovery. On May 3, by an Endorsed Letter Order, the court permitted the parties to depose Mr. Vanegas and to file supplemental submissions based upon that deposition no later than June 17.

During discovery GMC selected 12 of its currently employed Garage Managers for deposition. Now, after the close of discovery, GMC supports its summary judgment motion with the Declarations of 7 currently employed Garage Managers who have not been deposed (James Isaac, Arnold Herrera, Emilio Orjuela, Bob Tansey, Sal Rodriguez, Marino Fernandez, Pierre Prepretit). The reliability of this type of declaration is doubtful.[1] This evidence should be treated skeptically. See, Betancourt v. Maxim Healthcare Services, Inc., 2011 WL 1548964, 7 (N.D. Ill. 2011)(the weight given to affidavits by current employees that have not been subjected to the adversary process must be

---

[1] The Garage Managers who were deposed frequently clarified their answers. One example out of many:, in response to a question by GMC's counsel, Garage Manager Paillant testified that his wages were never docked if he came in late. (Pal 15)   Later in the deposition, in response to a question by Plaintiff's counsel the testimony was clarified that whenever he put in less work time, he got less pay. (Pal 79).

tempered); In re Wells Fargo Home Mortg. Overtime Pay Litigation, 527 F.Supp.2d 1053, 1060 -

1061 (N.D. Cal. 2007) (selectively presented declarations from current employees must be carefully

scrutinized because they carry within them possible coercive pressure arising from the ongoing

employment relationship).


## ARGUMENT

### Point I

#### GMC IS NOT ABSOLVED
#### BY A PORTAL-TO-PORTAL ACT
#### GOOD FAITH DEFENSE


The Portal-to-Portal Act "good faith" defense, 29 U.S.C. § 259[2] is an estoppel defense intended

to protect employers from designated agencies' mistaken interpretations of particular statutory

requirements. The defense is triggered only if an employer "innocently" violates the FLSA due to an

erroneous agency interpretation. Cole v Farm Fresh Poultry, Inc., 824 F. 2d 923, 929 (11th Cir. 1987).

GMC had to have relied upon and conformed with guidance from the Administrator of Wage and

Hour Division of Department of Labor to be shielded by this defense. De Leon-Granados v. Eller &

Sons Trees, Inc., 581 F.Supp.2d 1295 (N.D. Ga. 2008).

---

[2] 29 U.S. C. § 259(a) " Reliance in future on administrative rulings, etc." states in relevant part:
   [N]o employer shall be subject to any liability or punishment for or on account of the
   failure of the employer to pay minimum wages or overtime compensation under the
   Fair Labor Standards Act . . . if he pleads and proves that the act or omission
   complained of was in good faith in conformity with and in reliance on any written
   administrative regulation, order, ruling, approval, or interpretation, of the agency of
   the United States specified in subsection (b) of this section, or any administrative
   practice or enforcement policy of [the Administrator of the Wage and Hour Division
   of the Department of Labor].

This limited defense is carefully circumscribed by regulation. Oral statements are insufficient.  29 CFR § 790.13(a)  ("[T]he regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy relied upon and conformed with must be that of the "Administrator of the Wage and Hour Division of the Department of Labor," and a regulation, order, ruling, approval, or interpretation of the Administrator may be relied on only if it is in writing"). See also, 29 CFR § 790.18 (limiting the meaning to the phrase "administrative practice").  Employers may only rely upon rulings by a limited set of high level officials. 29 C.F.R. § 790.19(b) "[T]he relief from liability must be based on a ruling of a Federal agency, and not a minor official thereof." Id. at n. 124.

Courts uniformly reject reliance upon the type of oral conversation that GMC claims occurred in 1988. Bongat v. Fairview Nursing Care Center, Inc., 341 F.Supp.2d 181, 186 -187 (E.D.N.Y. 2004) (Verbal communications inadequate since the statute only protects employers who relied upon written administrative statements); Semeria v. Gatto, 75 N.Y.S.2d 140 (N.Y.Sup. 1947) (Reliance by employer upon inspection of employer's books and finding by Wage and Hour Division of Department of Labor that employer was not violating FLSA was not reliance upon an "administrative regulation, order, ruling, approval or interpretation").  See also, Cusumano v. Maquipan Intern., Inc., 390 F.Supp.2d 1216 (M.D. Fla. 2005 ) (U.S. DOL investigator's statement to employer regarding exempt status of employees insufficient); Nelson v. Alabama Institute For Deaf and Blind, 896 F.Supp. 1108, 1113 (N.D. Ala. 1995) (employer reliance on meeting with DOL Wage and Hour specialist was not reliance on written agency interpretation);  Pilkenton v. Appalachian Regional Hospitals, Inc., , 336 F.Supp. 334 (W.D.Va. 1971) ( Oral discussion with a U.S. DOL official was not a "written interpretation"). U.S. DOL correspondence and other informal written communication also do not satisfy the requirement of reliance upon a written agency interpretation. See,  Murphy v. Miller Brewing Co, 307 F.Supp. 829 (E.D.Wis. 1969)  affirmed 457 F.2d 221 (unpaid wages summary given

4

to employer by U.S. DOL investigator was not an "administrative regulation, order, ruling, approval or interpretation"); Spring v. Washington Glass Co., , 153 F.Supp. 312 (W.D.Pa. 1957) (U.S. DOL investigation supervisor's letter to company stating that employee in question was an executive employee was not a regulation, order, ruling, approval or interpretation of agency).

GMC's Portal-to-Portal Act defense contravenes the unambiguous language of the statute and its regulations, and flies in the face of overwhelming legal precedent. It should be rejected.

Point II

GMC FAILS TO MEET
ITS BURDEN TO PROVE
THE EXECUTIVE EXEMPTION

A. GMC Garage Managers Are Not Exempt Because
   They Are Not Paid  On a "Salary Basis"

GMC bears the burden of proving that its Garage Managers are paid on a "salary basis" in order to sustain its affirmative defense that the Garage Managers are exempt executives. GMC fails in this task. Its unserious presentation of its exemption defense scissors out the "salary basis" requirement. GMC's blinkered view of the facts purposely ignores the evidence of its own payroll records. Garage Mangers are paid by the hour. Their wages each pay period are the product of the number of hours worked multiplied by the hourly pay rate. The court is referred to  Plaintiffs' Memorandum Of Law In Support Of Motion For Partial Summary Judgment at Point II for a detailed discussion of this issue. For the court's convenience, the key points are summarized below.

GMC bears the burden of proving that its employees fall within the executive exemption. Reiseck v. Universal Communications of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010) [Citations omitted]. An employer "must overcome the presumption" that its employees are protected by the

5

FLSA. <u>Martin v. Malcolm Pirnie, Inc.</u>, 949 F.2d 611, 614 (2d Cir. 1991) <u>cert. denied</u>, 506 U.S. 905

(1992).

Both the FLSA and the NY Labor Law require that an employer claiming the executive

exemption prove "the duties test" <u>and</u> "the salary basis test." <u>Reiseck</u>, 591 F.3d at 105; <u>Malcolm</u>

<u>Pirnie, Inc.</u>, 949 F.2d at 613.

"Salary basis" is defined by regulation:

> (a) General rule. An employee will be considered to be paid on a "salary basis"
> within the meaning of these regulations if the employee regularly receives each pay
> period on a weekly, or less frequent basis, **a predetermined amount constituting all
> or part of the employee's compensation, which amount is not subject to reduction
> because of variations in the quality or quantity of the work performed**. Subject to
> the exceptions provided in paragraph (b) of this section, an exempt employee must
> receive the full salary for any week in which the employee performs any work without
> regard to the number of days or hours worked.

29 CFR § 541.602 "Salary Basis" [Emphasis Added.] See, <u>Havey v. Homebound Mortgage, Inc.</u>, 547

F.3d 158, 163 (2d Cir. 2008)(an employee is not paid on a salary basis if the employer maintains the

discretion to reduce employee wages based upon hours worked); <u>Malcolm Pirnie</u>, 949 F.2d at 615

("an employee who can be docked pay for missing a fraction of a workday must be considered an

hourly, rather than a salaried employee").

Neither GMC's subjective intent or the label that it, or its employees, utilize determines whether

employees are "salary basis." <u>Wright v. Aargo Security Services, Inc.</u> , 2001 WL 91705, 8 (S.D.N.Y.

2001).

GMC's summary judgment motion ignores its own actual pay practices which prove that the

Garage Managers did not receive a predetermined amount each pay period. Garage Manager's gross

pay each pay period was just hourly rate times hours reported. Wages regularly fluctuated (including

deductions of less than a full day's pay) because of the number of hours worked. GMC's payroll

records, Garage Manager paystubs, consistent deposition testimony of the Garage Managers and

6

admissions by GMC Management Team during depositions proves an "actual practice" of reducing Garage Manager's compensation because of the hours worked. GMC's claim that some Garage Managers and members of management referred to compensation as "salary" is entirely besides the point. GMC cannot meet its burden of establishing the executive exemption.

    B. <u>Material Fact Disputes Prevent Resolution Of The "Duties Test." By Summary Judgment</u>.

    Because GMC cannot meet the salary test, it is not necessary to reach the exemption's "duties test." In any event, material fact disputes make it impossible to resolve this test by summary judgment.

    Key fact disputes exist regarding whether the Garage Managers' "primary duty" is "management" of their garages and whether their recommendations regarding "hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." See, 29 C.F.R. § 541.100(a) (2004). Regulations define these key terms. See, §541.102 "Management"; §541.105 "Particular Weight"; and §541.700 "Primary duty."

    The Garage Managers' work sometimes touches upon a limited number of the "management" activities describe in §541.102, however there is conflicting evidence regarding whether this is the "primary duty," i.e. "the principal, main, major or most important duty" that the Garage Managers perform. §541.700 "Primary duty." Disputes also exist regarding whether the suggestions that Garage Managers sometimes make with regard to the status of the Parking Attendants are merely "occasional" and whether it is part of their job duties to make such suggestions. §541.105. Many of the "management" tasks that GMC attributes to the Garage Managers are puffed-up descriptions of routine non-managerial chores such as showing a new employee how to use a garage elevator, or reporting on the rates of competing garages, and transcribing data from time cards onto payroll reporting forms.

Point III

## GMC'S "EC"
## BONUS IS NOT
## OVERTIME PAY

The lump sum "Extra Compensation" bonus paid each month to Garage Managers never related to the hours worked. It was a fixed monthly amount set by GMC based upon employee longevity, the size of the garage at which the Garage Manger was stationed, and other factors.  It does not satisfy the overtime pay requirement. The court is referred to  Plaintiffs' Memorandum Of Law In Support Of Motion For Partial Summary Judgment at Point III  B for a detailed discussion of this issue. For the court's convenience, the key points are summarized below.

FLSA regulations explicitly rule that lump sum bonuses paid without regard to the hours worked do not satisfy the overtime obligation.  29 C.F.R. § 778.310 states in relevant part:

> A premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis.

Likewise 29 C.F.R. § 778.207 states in pertinent part:

> (a) ***The plain wording of the statute makes it clear that extra compensation provided by premium rates other than those described [ in FLSA Sections 7(e)(5), (6), and (7), which are inapplicable here] cannot be treated as overtime premiums. Wherever such other premiums are paid, they must be included in the employee's regular rate before statutory overtime compensation is computed; no part of such premiums may be credited toward statutory overtime pay.
> (b) Nonovertime premiums. *** lump sum premiums which are paid without regard to the number of hours worked are not overtime premiums and must be included in the regular rate.

See also, 29 C.F.R. § 778.201 (b) and (c) (No type of remuneration may be credited towards overtime payment except those described in §§7(e)(5), (6), and (7)).

8

The fact that the EC bonus exceeds the 1 ½ overtime requirement is of no matter. The FLSA requires the payment of overtime to nonexempt employees "regardless of the magnitude of each employee's monthly compensation." Malcolm Pirnie, 949 F.2d at 617.  The level of an employee's compensation is not a defense to its  FLSA overtime pay violations.

The EC payments are precisely the type of payment which the regulations disallow as meeting the overtime requirement. The  U.S. DOL has already instructed GMC that it may not use lump sum bonuses to meet the legal requirement to pay 1 ½ overtime pay. Twice the U.S. Department of Labor told GMC that it was violating the FLSA by not apportioning the EC bonus for purposes of calculating overtime pay for Parking Attendants. The U.S. DOL wrote to GMC on May 21, 1991 in connection with the GMC Parking Attendants "the firm failed to include bonus payments in computing the regular rate. As a result, back wages . . . were computed for 70 employees." If the bonuses should have been included in the employees regular rate to boost the employees' wages for purposes of the overtime calculation, then a fortiori, the bonuses cannot meet the requirement of payment of overtime wages.

Point IV

GMC FAILED TO
PAY FOR TIME
SPENT DELIVERING
DAILY CASH RECEIPTS
TO CENTRAL DEPOTS

GMC's failure to pay its Garage Managers for time spent dropping the daily cash receipts at the central depots is not excused even if GMC policy "permitted [Garage Managers] to leave their garages during their shifts so that they could drop off the cash before the end of their shifts. . ."

GMC's Memorandum of Law In Support of Summary Judgment Motion at 22.[3]  Work which an employer suffers or permits an employee to engage in outside of normal hours is compensable. See 29 C.F.R. § 785.11("Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift."); 29 C.F.R. § 785.13 ("it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough.") See, Hellmers v. Town of Vestal, N.Y., 969 F.Supp. 837, 845 (N.D.N.Y. 1997)

---

[3] The existence of any such policy is disputed.

CONCLUSION

This lawsuit turns on one point alone – GMC's Garage Managers have not been paid overtime or for all of their work time. GMC's legal violations are not excused by the Portal-to-Portal Act's good faith defense. GMC cannot prove its executive exemption defense because the Garage Managers are hourly-paid employees. GMC did not satisfied the 1 ½ overtime requirement by paying a monthly lump sum "EC" bonus.[4] Defendants' summary judgment motion should be denied.

Respectfully submitted,

KAHN OPTON, LLP

By: Stephen H. Kahn
Attorney for Plaintiffs
228 East 45th Street, 17th Floor
New York, New York 10017
Telephone 212/966-8686

---

[4] GMC claims that six opt-in plaintiffs (Antiono Cartagena, Van Gibbs, Amed Aguirre, Gabriel Arcila, Jaime Reyes and Johnny Abreu) are not properly includable in the FLSA collective action. GMC di not submit employment records to verify this claim. It relies only upon a company executive's Declaration. This issue should be determined at an inquest.