UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY MCLEAN and EDWIN RIVERA,<br><br>                Plaintiffs,<br><br>    -against-<br><br>GARAGE MANAGEMENT CORP., a New York corporation; GARAGE MANAGEMENT ASSOCIATES LLC, a Delaware limited liability company; CHAPMAN CONSULTING PAYROLL LLC, a New York limited liability company; CHAPMAN CONSULTING LLC, a New York limited liability company; and RICHARD M. CHAPMAN, Individually,<br><br>                Defendants. | 10 Civ. 3950 (DLC/GWG)<br><br>(ECF CASE) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LITTLER MENDELSON
A Professional Corporation
A. Michael Weber
Elias J. Kahn
900 Third Avenue
New York New York 10022
212.583.9600
Attorneys for Defendants

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................... 1

I. BECAUSE GMC RELIED ON AN ADMINISTRATIVE PRACTICE OF THE USDOL'S WAGE AND HOUR DIVISION, IT IS ABSOLVED OF LIABILITY UNDER SECTION 10 OF THE PORTAL-TO-PORTAL ACT ........................................ 1

    A. Alternatively, GMC Cannot Be Required To Pay Liquidated Damages Pursuant to Section 11 of the Portal-to-Portal Act ................................................... 3

II. THERE IS NO GENUINE DISPUTE THAT GMC GARAGE MANAGERS ARE EXEMPT EXECUTIVE EMPLOYEES ................................................................. 4

    A. Garage Managers Were Paid on a Salary Basis ........................................................ 4
    B. Plaintiffs Do Not Dispute That Garage Managers Customarily and Regularly Directed the Work of Two or More Full Time Employees .................... 6
    C. There is No Dispute That Garage Managers Performed Management Duties ........................................................................................................................ 6
    D. There is No Genuine Dispute That Management Tasks were Garage Managers' Primary Duty ............................................................................................. 6
    E. There is No Dispute That Garage Managers' Recommendations Concerning Changes of Status of Other Employees were Given Particular Weight ......................................................................................................................... 7

III. EC PAY PROPERLY COVERED THE ONE AND A HALF TIMES OVERTIME PREMIUM ............................................................................................... 8

IV. GARAGE MANAGERS WERE PROPERLY COMPENSATED FOR THE TIME THEY SPENT DROPPING CASH AT THE DEPOT ........................................ 9

V. SIX OPT-IN PLAINTIFFS' MUST BE DISMISSED FROM THE FLSA COLLECTIVE ACTION BECAUSE THEY WERE NOT GARAGE MANAGERS DURING THE RELEVANT TIME PERIOD .......................................... 9

VI. CONCLUSION ............................................................................................................. 10

...

## TABLE OF AUTHORITIES

PAGE

**CASES**

*Chaloupka v. SLT/TAG, Inc.,*
  2003 U.S. Dist. LEXIS 25500 (D. Or. Sept. 30, 2003) .......................................................... 4

*Herman v. RSR Sec. Servs. Ltd.,*
  172 F.3d 132 (2d Cir. 1999) ................................................................................................... 3

*McGuire v. City of Portland,*
  159 F.3d 460 (9th Cir. 1998) .................................................................................................. 6

*Nelson v. Alabama Inst for Deaf & Blind,*
  896 F. Supp. 1108 (N.D. Ala. 1995) ...................................................................................... 4

*Spradling v. City of Tulsa,*
  95 F.3d 1492 (10th Cir. 1996) ................................................................................................ 6

**OTHER AUTHORITIES**

29 C.F.R. § 541.10 .................................................................................................................. 4, 6

29 C.F.R. § 541.118 .................................................................................................................... 4

29 C.F.R. § 541.700 .................................................................................................................... 7

29 C.F.R. § 778.310 .................................................................................................................... 9

29 C.F.R. § 790.18 ...................................................................................................................... 1

29 U.S.C. § 207(a) ...................................................................................................................... 8

29 U.S.C. § 207(e)(5) .................................................................................................................. 8

29 U.S.C. § 259 ....................................................................................................................... 1, 3

29 U.S.C. § 260 ....................................................................................................................... 1, 3

## PRELIMINARY STATEMENT

GMC's moving and opposition summary judgment papers[1] show that Plaintiffs' FLSA and NYLL claims fail as a matter of law for the following reasons:

- *First*, pursuant to Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, GMC is immune from liability under the FLSA and NYLL because when the U.S. Department of Labor ("USDOL") informed GMC that its Garage Managers were exempt, GMC relied in good faith on an administrative practice of the Wage and Hour Division of the USDOL in classifying its Garage Managers as exempt;[2]
- *Second*, GMC Garage Managers are exempt executive employees paid on a salary basis;
- *Third*, the EC paid to Garage Managers properly qualifies as an overtime premium;
- *Fourth*, Garage Managers were properly compensated for the *de minimis* amount of time they spent dropping cash at designated depots; and
- *Fifth*, six opt-in plaintiffs are not includable in the FLSA collective action because they were not Garage Managers from May 12, 2007 to the present.

Plaintiffs' opposition papers do not raise a genuine issue of material fact concerning any of these showings. Thus, summary judgment should be entered in favor of Defendants.

## ARGUMENT

### I. BECAUSE GMC RELIED ON AN ADMINISTRATIVE PRACTICE OF THE USDOL'S WAGE AND HOUR DIVISION, IT IS ABSOLVED OF LIABILITY UNDER SECTION 10 OF THE PORTAL-TO-PORTAL ACT

GMC's moving papers show that it has a valid defense under Section 10 of the Portal-to-Portal Act ("Section 10") because it relied in good faith on an administrative practice[3] of the

---

[1] For a full statement of the facts material to this case, Defendants respectfully refer the Court to Defendants' April 22, 2011 Rule 56.1 Statement of Undisputed Facts ("D. 56.1"), Defendants' May 13, 2011 Response to Plaintiffs' Statement of Material Facts Pursuant to Local Rule 56.1 ("D. Resp. 56.1"), and Defendants May 27, 2011 Reply Rule 56.1 Statement of Undisputed Facts ("D. Reply 56.1") and all of Defendants' related declarations and exhibits.

[2] Alternatively, as explained *infra* Section I.A., GMC cannot be liable for liquidated damages pursuant to Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260.

[3] 29 C.F.R. § 790.18 defines "administrative practice" as "courses of conduct or policies which an agency has determined to follow in the administration and enforcement of a statute, either generally, or with respect to specific classes of situations." The definition further states: "Although they may be, and frequently are, based upon decisions or views which the agency has set forth in its regulations, orders, rulings, approvals, or interpretations, nevertheless administrative practices and enforcement policies differ from these forms of agency action in that such practices or policies are not limited to matters concerned with the meaning or legal effect of the statutes administered by the agency and may be based wholly or in or in part on other considerations."

Wage and Hour Division of the USDOL. Plaintiffs raise no genuine issues of material fact concerning this issue.

The following undisputed material facts show that GMC has a valid Section 10 defense:

- Doug Kamm of GMC stated that he was orally advised by USDOL investigators in 1988 and 1993 and by NYSDOL investigators in 1990 and 1997 that GMC Garage Managers are exempt executive employees, and GMC classified its Garage Managers as exempt.[4] (*See* D. 56.1 and D. Reply 56.1 ¶¶ 7, 26);
- At all times relevant to this litigation, Garage Managers were compensated in the same way as they were paid as in 1988. (*Id.* ¶ 13);
- The USDOL investigator from the 1988 investigation, Louis Vanegas, stated at deposition that he and his supervisor, Assistant District Director Paul Scensny, "looked at Garage Managers having a particular set of duties and receiving a salary, and we made a conclusion that they would be exempt." (*Id.* ¶ 18);[5]
- Vanegas wrote a memorandum, which was reviewed and approved by Scensny, which reflected their finding that the GMC Garage Managers are exempt executive employees under the FLSA. (*Id.* ¶¶ 17-18);
- Vanegas stated that he found that Garage Managers were exempt executive employees under the FLSA because their primary duty was management of the garage, they supervised at least two full time employees, and they were paid on a salary basis at a sufficient rate. (*Id.* ¶ 18);
- Vanegas stated that his "conclusions were consistent with the USDOL's Wage & Hour Division's *practice* concerning the application of the executive exemption to Garage Managers." (*Id.* ¶ 19) (Emphasis added); and
- Vanegas stated that he told GMC representatives about his conclusions concerning the exempt status of GMC's Garage Managers. (*Id.* ¶ 20).

Plaintiffs attempt to refute Defendants' Section 10 defense by asserting that oral statements concerning the USDOL's administrative practices are not sufficient to advance a Section 10 defense. (P. Opp. Mem. 4). Plaintiffs' assertion is wrong and contradicted by the plain wording of Section 10. While Section 10 states that employers may rely on "any written administrative regulation, order, ruling, approval, or interpretation," the statute also

---

[4] In assessing Garage Managers' exemption status, Kamm reviewed the applicable FLSA and NYLL statutes and regulations, interviewed Garage Managers about their jobs, reviewed Garage Managers' duties, observed Garage Managers working and met with attorneys during the investigations. (D. 56.1 and D. Reply 56.1 at ¶¶ 11-12).

[5] When Vanegas was asked at deposition if he was uncertain about his conclusion in 1988 that that Garage Managers were exempt executive employees, he said "No, that's not what I'm saying." (D. Reply 56.1 at ¶ 16).

2

unequivocally states that employers may rely on "*<u>any</u> administrative practice or enforcement policy of [the Administrator]*" 29 U.S.C. § 259. (Emphasis added.) The administrative practice or enforcement policy need not be written.

All of Plaintiffs' cited cases are inapposite because none of them addresses whether an employer can rely in good faith on oral statements concerning an administrative *practice* of the Wage and Hour Division of the USDOL, as GMC indisputably did here. (P. Opp. Mem. 4-5). Accordingly, GMC cannot be held liable under the FLSA pursuant to Section 10.

### A.  Alternatively, GMC Cannot Be Required To Pay Liquidated Damages Pursuant to Section 11 of the Portal-to-Portal Act

Even if the Court were to reject GMC's Section 10 defense and to find GMC violated the FLSA, which it should not, Plaintiffs would not be entitled to liquidated damages pursuant to Section 11 of the Portal-to-Portal Act ("Section 11"). The FLSA usually requires a court to award liquidated damages, which are equal to the back wages awarded (up to three years of back wages). However, Section 11 allows the court to withhold the otherwise mandatory award of liquidated damages:

> If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that it had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any [lesser] amount thereof.

29 U.S.C. § 260. The Section 11 good faith defense is available if the employer proves it "acted in subjective good faith" and "had objectively reasonable grounds for believing that the acts or omissions giving rise to the failure [to pay overtime] did not violate the FLSA." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (internal quotation marks omitted).

The evidence cited above concerning the USDOL and NYLL investigations of GMC Garage Managers, the government agencies' communication to GMC concerning the

investigations, Vanegas' representations concerning the exempt status of GMC Garage Managers and Kamm's effort to understand the requirements of the FLSA and NYLL demonstrate that GMC acted in good faith in classifying its Garage Managers as exempt and that Plaintiffs are not entitled to liquidated damages as a matter of law. *See Nelson v. Alabama Inst for Deaf & Blind*, 896 F. Supp. 1108, 1115 (N.D. Ala. 1995) (holding that oral opinion from DOL Wage & Hour specialist was sufficient to establish good faith under Section 11). *See also Chaloupka v. SLT/TAG, Inc.*, 2003 U.S. Dist. LEXIS 25500, at *6-*7 (D. Or. Sept. 30, 2003), *rev'd and remanded on other grounds by Gieg v. DRR, Inc.*, 407 F.3d 1038 (9th Cir. 2005) (holding that making a reasonable investigation of the FLSA in an attempt to ascertain its requirements was sufficient to establish Section 11 good faith defense).

II. **THERE IS NO GENUINE DISPUTE THAT GMC GARAGE MANAGERS ARE EXEMPT EXECUTIVE EMPLOYEES**

   A. **Garage Managers Were Paid on a Salary Basis**

As shown in GMC's moving and opposition papers, there is no genuine dispute that GMC's Garage Managers were paid on a salary basis. The main points from these briefs and the relevant parts of the Record are summarized below.

To qualify as a bona fide executive, an employee must be paid a salary of at least $455 per week – or, $23,660 annually. 29 C.F.R. § 541.10. There is no dispute that Garage Managers have always received an annual salary exceeding this minimum requirement.[6] (*See* 56.1 ¶¶ 23-24; D. Reply 56.1 ¶¶ 23-24).

Pursuant to 29 C.F.R. § 541.118 — the precursor and substantially similar regulation to 29 C.F.R. § 541.10 — USDOL Wage and Hour Division investigator, Louis Vanegas, and his

---

[6] The salaries of Garage Managers also are equal to or above the applicable New York State per week requirement. (*See* D. Mem. 15, n. 7).

4

supervisor, Paul Scensny, found in 1988 that Garage Managers were exempt employees paid on a salary basis. (*See* D. 56.1 and D. Reply 56.1 ¶¶ 17-18). At all relevant times regarding this litigation, GMC's method of compensating Garage Managers has not changed since 1988. (*Id.* ¶ 13). Garage Managers were scheduled to receive a set salary each week, and on weeks they did not receive their scheduled salary those days were made up at a subsequent point in time. (D. Resp. 56.1 ¶ 24) (*See also* D. Reply 56.1 ¶ 18 for analysis of Garage Managers' W-2 statements showing that Garage Managers always received their full salary despite occasional bi-weekly reductions).[7] At deposition, Vanegas stated that this method of paying employees may be compliant with the salary basis test.[8] (D. Reply 56.1 ¶ 18). In addition, a Garage Manager's salary would not be reduced for lateness or a daily absence, but it would sometimes be reduced if a Garage Manager took sick or disability days after exhausting his sick or disability leave days pursuant to the sick leave plan or if he had a prolonged personal absence. (D. Resp. 56.1 ¶ 24).

The only reason the payroll reflected an hourly rate was because the applicable Collective Bargaining Agreement required an hourly rate to be reflected in the payroll. (*See* D. 56.1 and D. Reply 56.1 ¶¶ 25). Not only did Vanegas testify that it is permissible to show an hourly rate on a

---

[7] Some of the evidence to support GMC's exemption defense derives from declarations from seven current GMC employees. Contrary to Plaintiffs' contention that the reliability of the declarations is "doubtful" (P. Opp. Mem. 2), the Garage Managers' sworn statements were only taken after each Garage Manager signed written consent forms where they acknowledged, *inter alia*, that they would be interviewed entirely of their own free choice and without any threats of intimidation, coercion or promises or benefits to them. (D. Reply 56.1 ¶ 35). Plaintiffs' implication that Garage Managers frequently changed their answers at deposition is also false. (P. Opp. Mem. 2, n. 1). As for Paul Paillant, he said: "when we become manager for the company, we have a year[ly] salary." (D. 56.1 ¶ 23). When asked if "any pay taken away if you came in late or early," he replied: "No." *Id.* When he later said that he was given less pay when he put down less time, he did not mean his guaranteed salary was reduced, he meant that he would receive less money that week but that time would be made up later through the guaranteed salary paid to him.

[8] At deposition, Vanegas said that in performing audits he would not only look at payroll records, but he would interview the worker about the hours they work, ask the company about recordkeeping, review time cards and time records, employment agreements, employment contracts, memorandums the workers may have received, and whether there were any specific arrangements that the workers had with their employer, whether they were verbal or not. (D. Reply 56.1 ¶ 16). He specifically stated that he would need more evidence than just the payroll records that were shown to him at deposition by opposing counsel to make a conclusive determination as to whether Garage Managers were paid on a salary basis. *Id.*

payroll for a salaried employee (D. Reply 56.1 ¶ 18), but Courts have recognized this as well. *McGuire v. City of Portland*, 159 F.3d 460, 464 (9th Cir. 1998); *Spradling v. City of Tulsa*, 95 F.3d 1492, 1500 (10th Cir. 1996). Thus, as the USDOL found, GMC Garage Managers were paid on a salary basis because they were entitled to a predetermined amount of compensation that was not subject to reduction based on the quantity or quality of work they performed. Based on the foregoing and Defendants' moving and opposition papers, there is no genuine dispute that Garage Managers were paid on a salary basis.

### B. Plaintiffs Do Not Dispute That Garage Managers Customarily and Regularly Directed the Work of Two or More Full Time Employees

Plaintiffs do not dispute in their opposition 56.1 Statement or brief that Garage Managers supervise and direct the work of two or more full time employees. (*See* D. 56.1 ¶ 32; D. Reply 56.1 ¶ 32). Thus, there is no dispute concerning this element of the executive exemption.

### C. There is No Dispute That Garage Managers Performed Management Duties

Plaintiffs admit in their opposition 56.1 Statement and brief that Garage Managers performed management duties as described in 29 C.F.R. § 541.102.[9] (P. Opp. Mem. 7; D. Reply 56.1 ¶ 2, 32-94). Thus, there is no genuine dispute that Garage Managers performed management tasks.

### D. There is No Genuine Dispute That Management Tasks were Garage Managers' Primary Duty

Defendants' moving papers show that Garage Managers' primary duty was management tasks. In response, Plaintiffs solely make an insufficient, conclusory statement that disputes of

---

[9] Plaintiffs falsely state that Garage Managers perform "a limited number" of management duties and that their tasks are "puffed-up descriptions of routine non-managerial chores." (P. Opp. Mem. at 7). As shown on pages 15-16 in Defendants' opening papers and in the Record, there is no genuine dispute that GMC Garage Managers performed a wide range of integral management duties (D. Mem. at 15-16; D. Reply 56.1 ¶¶ 2, 32-94). This list of tasks, which is summarized on pages 15-16 in Defendants' moving brief, cannot possibly be considered a "limited" number of management duties or "puffed-up descriptions of routine non-managerial chores."

fact exist concerning this issue. (P. Opp. Mem. 7). The following undisputed facts demonstrate there is no genuine issue of material fact concerning the Garage Managers' primary duty:

- Garage Managers spend the majority of their time on managerial tasks rather than manual work such as retrieving or parking cars (*See* D. 56.1 and D. Reply 56.1 ¶¶ 104-113) (D. Resp. 56.1 ¶ 16);
- Garage Managers concurrently supervise employees while performing non-exempt work (*See* D. 56.1 and D. Reply 56.1 ¶¶ 111-113);
- Garage Managers are principally responsible for delivering a profit at each garage location (*See* D. 56.1 and D. Reply 56.1 ¶ 67);
- Garage Managers are responsible for doing whatever they could to improve GMC's business, including promoting the Garage to neighboring businesses and buildings, surveying other garages, recommending rate changes to GMC Management and ensuring that the Garage has few damage claims. (*See* D. 56.1 and D. Reply 56.1 ¶¶ 68-69); and
- Garage Managers testified and swore in declarations that their main and most important tasks are their management duties. (*See* D. 56.1 and D. Reply 56.1 ¶¶ 33-36, 39, 70, 79, 104, 110). For example, one Garage Manager stated: "[M]y most important duties are my supervisory and management duties. Anyone can park cars, but I am responsible for making sure the garage is operating correctly, directing the work of the employees who work under me and making sure the customers at my garage are satisfied." (*Id.* ¶ 35). When asked what he does for most of the day, one Garage Manager responded: "I run the place." When asked what this meant, he stated: "I tell the guys what to do." (*Id.* ¶ 33).

Based on these undisputed facts, Garage Managers' management tasks are their primary duty because there is no genuine issue of material fact that these tasks are their "principal, main, major or most important duty" that they perform. 29 C.F.R. § 541.700.

### E. There is No Dispute That Garage Managers' Recommendations Concerning Changes of Status of Other Employees were Given Particular Weight

Defendants' moving papers show that Garage Managers' recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight by GMC management. Neither Plaintiffs' opposition 56.1 Statement or brief dispute that Garage Managers recommendations concerning hiring, firing, advancement, promotion, demotion, suspension and discipline are mostly or always accepted by GMC (*See* D. 56.1 and D. Reply 56.1 ¶¶ 40-66). Plaintiffs' opposition brief makes a conclusory statement that

there is a dispute of fact as to whether it is part of Garage Managers' job duties to make recommendations. (P. Opp. Mem. 7). However, the Record indisputably shows that Garage Managers testified that they are given this authority by GMC (*See* D. 56.1 and D. Reply 56.1 ¶¶ 40, 46, 52, 58, 64), and as demonstrated above, they exercise it. Not only do they exercise this authority, but in contrast to Plaintiffs' unsupported statement that there is a disputed fact as to whether it is "occasional" (P. Opp. Mem. 7), there is no dispute that Garage Managers regularly make these recommendations. (*See* D. 56.1 and D. Reply 56.1 ¶¶ 40-66). For instance, one Garage Manager testified that he has made about 10-15 promotion recommendations and they were followed for the majority of the time. (*See* D. 56.1 and D. Reply 56.1 ¶ 51). Based on the foregoing undisputed facts, there is no genuine issue of material fact that Garage Managers' recommendations regarding employees' employment status are given particular weight.

### III. EC PAY PROPERLY COVERED THE ONE AND A HALF TIMES OVERTIME PREMIUM

As demonstrated in GMC's moving and opposition papers, there is no genuine dispute that EC satisfied the overtime requirement. The primary points from these briefs and the relevant parts of the Record are summarized below.

EC should not be included in the Garage Managers' regular rate of pay. Under the FLSA, the regular rate does not include: "Extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek . . . in excess of the maximum workweek applicable to such employee under [29 U.S.C. § 207(a)]." 29 U.S.C. § 207(e)(5). EC represented "a premium rate paid," which did not have to be included in the regular rate because it always represented at least one and one half time the Garage Managers regular rate of pay for all hours worked over 40 in a week. (*See* D. 56.1 ¶¶ 30-31, examples of calculations for Garage Managers Henry McLean, Edwin Rivera and Bolivar Cartagena).

Plaintiffs again contend the EC does not qualify as an overtime premium because they claim EC is not related to the hours worked pursuant to 29 C.F.R. § 778.310. (P. Opp. Mem. 8). As stated in GMC's opposition brief, EC was paid with regard to hours worked because there is no dispute that GMC specifically planned that EC would always at least cover the number of overtime hours worked over 40 hours in a week, and it did in fact cover (and exceed) these hours worked. (D. 56.1 ¶¶ 30-31). Thus, EC properly qualifies as an overtime premium.[10]

### IV. GARAGE MANAGERS WERE PROPERLY COMPENSATED FOR THE TIME THEY SPENT DROPPING CASH AT THE DEPOT

The Record indisputably shows that Garage Managers were permitted to leave their garages during their shifts so that they could drop off the cash before the end of their shifts, and this is what Garage Managers did. (D. Reply 56.1 ¶¶ 96-102). In addition, the time that Garage Managers spent dropping off the cash was *de minimis* and need not be compensated anyway. (D. Opp. Mem. 9-10). Thus, the Court should grant summary judgment on Plaintiffs' claim that they were not properly compensated when they dropped off the cash at the depot.

### V. SIX OPT-IN PLAINTIFFS' MUST BE DISMISSED FROM THE FLSA COLLECTIVE ACTION BECAUSE THEY WERE NOT GARAGE MANAGERS DURING THE RELEVANT TIME PERIOD

There is no genuine dispute that six opt-in Plaintiffs — Antonio Cartagena, Van Gibbs, Amed Aguirre, Gabriel Arcila, Jaime Reyes and Johnny Abreu — were not Garage Managers from May 12, 2007 to the present and are therefore not properly includable in the FLSA collective action. (D. Reply 56.1 ¶¶ 115-121). Although GMC CEO Gordon Hamm's undisputed declaration alone is sufficient to prove this point, GMC has also now included

---

[10] Plaintiffs argue that because the USDOL found that bonuses for Parking Attendants should be included in the regular rate that EC for Garage Managers should be included in the regular rate. (P. Opp. Mem. 9). This argument fails because there is no dispute that bonuses for Parking Attendants were different than the EC for Garage Managers. (D. Resp. 56.1 ¶ 42). Parking Attendants received a bonus in addition to 1.5 times overtime pay; Garage Managers only received EC, which constituted a proper overtime premium. *Id.*

documents showing that these opt-in Plaintiffs were not Garage Managers from May 12, 2007 to the present. (*Id.* ¶¶ 116-121). Thus, these opt-in Plaintiffs should be dismissed from the FLSA collective action, and an inquest is not required to make this determination.

## VI.   CONCLUSION

For the reasons set forth above, as well as the reasons set forth in their opening papers and their opposition to Plaintiffs' motion for summary judgment, Defendants respectfully request that the Court grant summary judgment in favor of Defendants and grant such other and further relief as the Court deems just and proper.

Date:   May 27, 2011
        New York, New York

                                          /s/
                                    _____
                                    A. Michael Weber
                                    Elias J. Kahn
                                    LITTLER MENDELSON
                                       A Professional Corporation
                                    900 Third Avenue
                                    New York, NY  10022.3298
                                    212.583.9600
                                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, A. Michael Weber, hereby certify that I electronically filed **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, REPLY DECLARATION OF A. MICHAEL WEBER AND EXHIBITS ANNEXED THERETO, AND DEFENDANTS' REPLY STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1** with the Clerk of the District Court for the Southern District of New York using the CM/ECF system, which sent notification of such filing to attorney for Plaintiffs:

> Stephen H. Kahn, Esq.
> Kahn Opton, LLP
> 228 East 45th Street, 17th Floor
> New York, NY 10017
> Ph: 212-966-8686
>
>
> Kahn Opton, LLP
> One Parker Plaza
> Fort Lee, NJ 07024
> Ph: 201-947-9200
> Fax: 201-402-6878

To his registered email address: skahn@kahnopton.com

> _/s/ A. Michael Weber_
> A. Michael Weber

Date: May 27, 2011