UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
HENRY MCLEAN and EDWIN RIVERA,      :
                 Plaintiffs,    :
                              :
         -v-              :      10 Civ. 3950 (DLC)
                              :
GARAGE MANAGEMENT CORP., a New York    :     <u>OPINION & ORDER</u>
corporation; GARAGE MANAGEMENT ASSOCIATES :
LLC, a Delaware limited liability company; :
CHAPMAN CONSULTING PAYROLL LLC, a New York :
limited liability company; CHAPMAN      :
CONSULTING LLC, a New York limited       :
liability company; and RICHARD M. CHAPMAN, :
Individually,                  :
               Defendants.    :
-------------------------------------------X

APPEARANCES:

For Plaintiffs:
Stephen H. Kahn
Kahn Opton, LLP
228 East 45th Street
New York, NY 10017

For Defendants:
A. Michael Weber
Elias J. Kahn
Littler Mendelson, A Professional Corp.
900 Third Avenue
New York, NY 10022

DENISE COTE, District Judge:

The plaintiffs and defendants have made cross motions for

summary judgment in this action brought under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et seq</u>.  The plaintiffs

are Garage Managers employed by Garage Management Corp. ("GMC")

or related corporate entities.  The plaintiffs seek principally

1

to establish the correct method for calculating their overtime
pay and the payment of overtime wages for the period before mid-
April 2010.[1]  For the following reasons, the plaintiffs' motion
is granted in part and the defendants' motion is denied.


BACKGROUND

     The following facts are undisputed unless otherwise
indicated.  GMC operates approximately 68 parking garages in New
York City and two garages in Hoboken, New Jersey.  Each parking
garage is run by a Garage Manager, who is responsible for
managing all aspects of the garage's operations, including its
profitability.  They supervise Parking Attendants, who park and
retrieve cars and collect money.  Garage Managers are themselves
supervised by an Area Supervisor, who is responsible for
approximately thirty garages.

     Garage Managers are regularly scheduled to work five days a
week for more than 40 hours per week.  Most Garage Managers are
regularly scheduled to work about 50 hours per week.  Garage
Managers use a time clock, which records their hours for each
day they work.

---

[1] In mid-April 2010, the defendants revised their compensation
system for Garage Managers.  The plaintiffs agree that the
current payment system complies with the FLSA requirements for
payment of overtime wages.

2

Garage Managers are required to make daily drop offs of the cash receipts and related paperwork to a central depot. The drop-off must be witnessed by an employee at a central depot. For at least some Garage Managers the trip to the depot requires travel lasting from 15 to 30 minutes after the Garage Manager has "punched-off" the time clock. In such cases, the time to drop off the cash receipts is not recorded by the time clock.

Prior to mid-April 2010, the payroll records and paystubs for Garage Managers reflected an hourly rate for straight time wages for all hours shown on the records created by the time clocks.[2] The hourly compensation equaled the number of hours worked times the hourly wage rate, minus appropriate deductions. As the GMC Policies and Procedures Manual explained:

> Each employee is required to punch in and out on the manual time clock at the beginning and end of their shift. . . .
>
> At the end of each pay period, the manager must add the total hours worked for each employee and record this total on each time card. The manager will then verify the hours worked on the time card vs. the scheduled hours on the weekly schedule.

In addition to the compensation for every hour worked, each Garage Manager was also paid a monthly lump sum Extra Compensation bonus called an "EC bonus." The EC bonus was a

[2] GMC switched from a weekly pay period to a bi-weekly pay period in July 2006.

pre-determined amount for an employee that did not vary from month to month.  The amount of an individual's EC bonus was determined from a number of factors including garage assignment, merit increases, garage transfers, promotions and seniority. The amount of the EC bonus did not vary because of the hours worked, but GMC contends that it was more than sufficient to cover payment of any overtime wages due during the pay period.

This action was filed on May 12, 2010.  On August 11, the Court authorized notice of a collective FLSA action. Approximately 47 of the currently employed 60 Garage Managers filed consents to join the action.  On March 29, 2011, the defendants' motion to dismiss and to compel arbitration was denied.  Mclean v. Garage Manage. Corp., 10 Civ. 3950 (DLC), 2011 WL 1143003 (S.D.N.Y. Mar. 29, 2011).

Fact discovery closed on March 23, 2011.  In addition to the motions addressed in this Opinion, the plaintiffs have moved to "certify" a class action on plaintiffs' New York Labor Law claims, and the defendants have moved to deny FLSA collective action "certification."[3]

---

[3] "Certification" of an FLSA action refers only to the court's power to facilitate notice to potential plaintiffs.  Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).

DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 225, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect

the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

The plaintiffs have moved for partial summary judgment on six issues: (1) Garage Managers are not exempt from the overtime laws since they are "salary basis" employees; (2) GMC did not pay overtime wages to Garage Managers prior to mid-April 2010; (3) the EC bonuses are not overtime wages; (4) to calculate overtime pay, the hourly rate must be increased by apportioning the EC bonus to the hourly rate; (5) Garage Managers must be paid for the time taken to make the daily drop offs of cash receipts; and, (6) that Richard Chapman is an employer.

The defendants have moved for summary judgment on five issues:  (1) Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259(a), provides a good faith defense to the defendants which operates as a complete bar to FLSA liability; (2) Garage Managers are bona fide executives and therefore exempt from the FLSA requirements regarding overtime pay; (3) the EC bonus constituted proper payment of all overtime pay if GMC was

required to pay overtime; (4) Garage Managers made the daily
drop offs of cash receipts before they "punched-out" on the time
clocks and therefore were compensated for this work; and (5) six
plaintiffs were not employed after May 12, 2007, and therefore
their claims must be dismissed.  Since many of the eleven issues
raised by the parties overlap, they will be addressed in the
seven sections that follow.

I. Good Faith Exemption

     GMC contends that it cannot be held liable for any FLSA
violation because it relied on a "practice" of the United States
Department of Labor ("DOL") that classified Garage Managers as
exempt employees.  GMC has not shown that it is entitled to
summary judgment on this defense.

     Beginning in 1988, the DOL conducted multiple
investigations of GMC's overtime pay practices for its Garage
Attendants.  These investigations found violations of the
overtime pay regulations and in response to a 1993 DOL
investigation GMC agreed to pay back wages to ninety-five Garage
Attendants.

     During the course of the 1988 investigation, DOL
investigator Louis B. Vanegas told GMC's Director of Personnel

that Garage Managers were exempt executives.[4]  At the time of

that statement, Vanegas was 22 years old and an apprentice

investigator responding to a wage complaint by a GMC Parking

Attendant.  The status of GMC's Garage Managers was not the

central focus of his investigation.  In his internal report of

the 1988 investigation, Vanegas wrote

> Blanket overtime exemption given to managers of all
> parking garages on the basis that they were paid a
> guaranteed salary regardless of hours worked and
> their primary duty was management of the garage in
> which they worked.  Review of mgr's payroll rec'ds
> indicated that they were paid for at least 40 hrs
> even when they worked less than 40 hrs, the mgrs
> supervised at least 2 FT [full time] employees.

Vanegas is no longer with the DOL and provided a

declaration in support of the defendants' motion for summary

judgment in which he states, inter alia, that

> I found that [GMC] Garage Managers were exempt
> executive employees under the FLSA because their
> primary duty was management of the garage, they
> supervised at least two full time employees, and they
> were paid on a salary basis at a sufficient rate.  My
> conclusions were consistent with the USDOL's Wage &
> Hour Division's practice concerning the application
> of the executive exemption to Garage Managers.  I
> told GMC representative about my findings concerning
> the exempt status of GMC's Garage Managers.

In his deposition in this action, Vanegas was shown payroll

records and paystubs for Garage Managers and admitted that his

---

[4] Vanegas remained with the DOL for many years and became the
District Director of the New York City Office of the U.S. DOL
Wage and Hour Division.  He was deposed in this action.

1988 view regarding the exemption may have been wrong and that he would have to review more records to make a more reliable assessment.

Section 10 of the Portal-to-Portal Act ("Section 10") provides an employer with an affirmative defense based on its good faith belief that his failure to pay overtime wages conformed to DOL administrative practice or enforcement policy. Section 10 provides in pertinent part

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Administrator of the Wage and Hour Division of the DOL], or <u>any administrative practice or enforcement policy of [the Administrator</u>] with respect to the class of employers to which he belonged.  Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259(a) (emphasis supplied).

GMC contends that Vanegas's oral statement to GMC in 1988 to the effect that Garage Managers were exempt provides it with the good faith defense enacted in Section 10 and completely bars the FLSA claims in this action.  GMC is wrong.  An oral

9

statement by a DOL field investigator does not, as a matter of law, constitute an administrative practice or enforcement policy for purposes of Section 10.   See 29 C.F.R. § 790.13(a) ("In order to provide a defense . . . a regulation, order, ruling, approval, or interpretation of the Administrator may be relied on only if it is in writing." (emphasis supplied)); Anness v. United Steelworkers of Am., 707 F.2d 917, 921 (6th Cir. 1983). Moreover, even if Vanegas's statement could have triggered the Section 10 defense, there would remain a question of fact whether GMC relied in good faith on that statement in its payroll practices for Garage Managers.   29 C.F.R. § 790.15 ("'Good faith' requires the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry.").

II. Bona Fide Executive Exemption; Salary Basis Employees

    GMC contends that Garage Managers are properly classified as bona fide executives.  The plaintiffs assert that Garage Managers do not qualify for this exemption because the "salary basis test," one of the two components of the exemption, cannot be met here.

    The FLSA exempts employees employed in a bona fide executive capacity from the overtime compensation regulations.

29 U.S.C. § 213(a)(1).  An employer bears the burden of proving that an exemption applies.  Reiseck v. Universal Comm. Of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010).  The New York Labor Law follows the same standards in this regard as the FLSA.  N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-3.2 (2011) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of . . . the [FLSA].").

An employer claiming this exemption must meet both a duties and a salary basis test.  Reiseck, 591 F.3d at 105.  The salary basis test provides that

> (a) General rule.  An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.  Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602 (emphasis supplied).[5]

---

[5] The current salary basis test is not materially different from the salary basis test that applied before.  69 F.R. § 22122-01 (Apr. 23, 2004).

An employee is not paid on a salary basis if the employer
maintains the discretion to reduce employee wages based upon the
numbers of hours the employee works, and either makes it a
practice to do so or effectively communicates that it will do
so.  Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d
Cir. 2008).  Thus, an employee who can be docked for missing a
fraction of a workday "must be considered an hourly, rather than
a salaried employee."  Martin v. Malcolm Pirnie, Inc., 949 F.2d
611, 615 (2d Cir. 1991).

The plaintiffs have shown that GMC is not entitled to rely
on the executive exemption in defending against the plaintiffs'
claims in this action.  Garage Managers did not receive a salary
each month.  Instead, their pay was adjusted to reflect the
hours that they had worked during a pay period and regularly
fluctuated because of that calculation.

The defendants contend that the payroll records for the
Garage Managers reflected an hourly rate of pay because the
Collective Bargaining Agreement ("CBA") required that an hourly
rate of pay be reflected in the payroll records.  Whatever the
CBA required, it remains true that the payroll records reflect
variations in wages based on the number of hours worked during a
pay period.  The defendants do not suggest that these records
are inaccurate.

Because of the fluctuations in pay due to the number of hours a Garage Manager worked, the defendants' reliance on McGuire v. City of Portland, 159 F.3d 460, 464 (9th Cir. 1998), is misplaced.  In McGuire, the salary was not subject to reduction due to absences from work.  Id.

Next, the defendants point out that GMC consistently used the term "salary" to describe its compensation of Garage Managers and several employees have asserted that they became "salaried" employees once they became Garage Managers.  The use of this terminology does not raise a question of fact as to how GMC actually calculated the compensation it paid its Garage Managers.  The payroll records show that an hourly rate of pay was applied to the number of hours worked during a pay period to arrive at a component of the compensation.

III. EC Bonus and Payment of Overtime Compensation

The defendants assert that they are entitled to summary judgment because, even if it should be determined that GMC was required to pay Garage Managers overtime compensation, that GMC did in fact make such payment.  They assert that the EC Bonus always compensated Garage Managers for at least that amount of pay to which the Garage Managers were entitled for overtime work.  Plaintiffs assert that the EC Bonus payments do not

13

constitute overtime pay as a matter of law.  The plaintiffs are correct.

DOL regulations require the payment of overtime wages to correspond directly to the number of overtime hours.  They provide

> A premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of hours worked does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis. . . . The reason for this is clear.  If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that could  be worked.  The Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work would thus be defeated.  For this reason, where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate and may not be credited against statutory overtime compensation due.

29 C.F.R. § 778.310; accord Dooley v. Liberty Mut. Ins. Co., 369 F. Supp. 2d 81, 84-85 (D. Mass. 2005).

The EC Bonus payments are lump sum payments that are regularly made in the same amounts to an individual Garage Manager.  Since they do not fluctuate based on the number of overtime hours an employee has worked, they cannot qualify as overtime payments.

14

The defendants contend that the Garage Managers have waived the right to assert that the EC Bonus was not a payment for overtime work since their union was aware of the monthly EC Bonus payments and agreed that they were an appropriate way to pay overtime.[6]  An employee's rights under the FLSA to overtime pay may not be waived.

> FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.  Moreover, . . . congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement.

Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740-41 (1981) (citation omitted).


IV. Calculation of Overtime Compensation

The plaintiffs have moved for summary judgment on the methodology for calculating the payment of overtime

---

[6] In support of this claim, defendants rely on the declaration of Gordan Hamm, Chief Executive Officer of GMC, who testified that

> [t]he Garage Mangers' union, Local 272, was aware of the monthly EC payments and agreed that the monthly EC payments would cover overtime compensation for all hours worked over 40 hours in a week.  In fact, four former Garage Managers, Joe Mattesi, Matthew Bruccoleri, Eddie Rivera and Jose Rojas, who worked for GMC and received EC payments subsequently became employed at Local 272 as union officials.

compensation.  They contend that the EC Bonus payments to Garage Managers must be included as part of the total remuneration in calculating the regular rate of pay.  The defendants dispute this.  The defendants rely on 29 U.S.C. § 207(e)(5) ("Section 207(e)(5)") to contend that the EC Bonus should not be included in calculating the regular rate of pay.

Overtime pay is calculated by applying a multiplier of one and one half to an employee's "regular rate" of pay.  29 C.F.R. § 778.107; 29 U.S.C. § 207(a)(1).  Generally, the regular rate of pay "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109; 29 U.S.C. § 207(e).

When an employee receives a bonus, that bonus is included as part of the total remuneration.  29 C.F.R. § 778.110(b). When a bonus is paid on a monthly basis, then it is apportioned to the relevant pay periods.  29 C.F.R. § 778.209(a).

The DOL has applied these regulations to GMC in connection with its investigation of GMC's practices in paying its Parking Attendants.  GMC used a bonus system for paying Parking Attendants that is similar to the EC Bonuses at issue here.  In

16

1991, DOL wrote to GMC and advised it that "the firm failed to include bonus payment in computing the regular rate."

As was true for Parking Attendants, the EC Bonus payments constitute part of the regular pay for the GMC Garage Managers. Thus, the EC Bonus payments must be apportioned over the pay periods and included in the calculation of the regular pay. After the regular pay is determined, then the overtime payments due to Garage Managers can be properly calculated.

The defendants maintain that under Section 207(e)(5), EC Bonus payments need not be included in calculating the regular rate of pay. Section 207(e)(5) provides that "the regular rate at which an employee is employed shall be deemed to include all remuneration" except for

> extra compensation provided by a premium rate paid
> for certain hours worked by the employee in any day
> or workweek because such hours are hours worked in
> excess of eight in a day or in excess of the maximum
> workweek applicable to such employee under subsection
> (a) of this section or in excess of the employee's
> normal working hours or regular working hours, as the
> case may be.

29 U.S.C. § 207(e)(5).

DOL regulations describe the premium payments encompassed by Section 207(e)(5) and properly excluded from the calculation of the regular rate of pay. See 29 C.F.R. § 778.207(a); 29 C.F.R. §§ 778.201 through 778.206. Tellingly, GMC does not identify which exclusion it believes applies to the EC Bonuses.

17

It has therefore failed to show that Section 207(e)(5) permits the exclusion of the EC Bonuses from the calculation of regular pay.  As already explained, EC Bonus payments are a type of remuneration that the DOL regulations classify as a component of the regular rate of pay.


V. Compensation for Daily Drop-Offs

The plaintiffs seek summary judgment on the factual finding that General Managers routinely deliver the daily receipts to central depots after they "punch-out" for the day and that they are not paid for this task.  They assert that they have presented testimony from nine employees of this practice and contend that that is sufficient to shift the burden to GMC to prove the precise amount of uncompensated work that was performed or to show that no such uncompensated work was performed by an individual employee.

An employee bringing an FLSA action has the burden of proving that he performed work for which he was not compensated. Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003). But when an employer does not have accurate records of the hours that an employee has worked, the employee need only show "that he has in fact performed work for which he was improperly compensated." Id. at 87-88.  With a showing of the amount and

extent of uncompensated work that is sufficient to support a
"just and reasonable inference" of a workplace practice, it is
unnecessary for all employees to testify in order to be
compensated.  <u>Id</u>. (citation omitted).  The testifying plaintiffs
must, however, produce sufficient evidence "to make a reasonable
inference as to the number of hours worked by the non-testifying
employees."  <u>Id</u>.  <u>See also</u> <u>Reich v. S. New Eng. Telecomm. Corp.</u>,
121 F.3d 58, 67 (2d Cir. 1997).

> Where an inference may be properly drawn, the
>
> burden then shifts to the employer to come forward
> with evidence of the precise amount of work performed
> or with evidence to negative the reasonableness of the
> inference to be drawn from the employee's evidence.
> If the employer fails to produce such evidence, the
> court may then award damages to the employee, even
> though the result be only approximate.

<u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-88
(1946).

GMC disputes the plaintiffs' characterization of the
evidence.  It contends that there has not been a sufficient
showing of a pattern to support the proposed inference and that
in any event the amount of any uncompensated labor would have
been <u>de</u> <u>minimis</u>.

There are questions of fact that remain as to whether
Garage Managers were permitted to drop off the cash and receipts
before "punching out" and whether the depots were so close to

the garages that any uncompensated time was in fact <u>de</u> <u>minimis</u>.
The plaintiffs' motion for summary judgment on this factual
issue is denied.


VI. Richard Chapman's Status as Employer

     Plaintiffs have moved for summary judgment on Richard
Chapman being an employer for purposes of the relevant statutes.
This prong of the motion is uncontested and is granted.




VII. Six Plaintiffs

     The defendants move for dismissal of the claims filed by
six of the plaintiffs[7] on the ground that they were not employed
during the period defined by the notice of the collective
action, that is, after May 12, 2007.  The plaintiffs agree that
they must be dismissed from this action if they were not
employed after May 12, 2007, but seek confirmation of that fact.

     GMC shall provide plaintiffs' counsel with documentary
confirmation of the dates of employment for these six employees.
Assuming that those records confirm GMC's representation, the

---

[7] The six plaintiffs are Antonio Cartegena, Van Gibbs, Amed
Aguirre, Gabriel Arcila, Jaime Reyes and Johnny Abreu.

parties shall submit the appropriate stipulation to the Court
for dismissal of these claims.


CONCLUSION

     Plaintiffs' motion for summary judgment denying the Garage
Managers status as exempt employees is granted and the
defendants' motion seeking their exemption is denied.  The
defendants' summary judgment motion in support of a good faith
defense under Section 10 of the Portal-to-Portal Act is denied.
Plaintiffs' three motions on the calculation of overtime are
granted: (1) GMC did not pay overtime wages to Garage Managers
prior to mid-April 2010; (2) the EC bonuses are not overtime
wages; and, (3)to calculate overtime pay, the hourly rate must
be increased by apportioning the EC bonus to the hourly rate.
Accordingly, defendants' motion for a finding that the EC
bonuses were overtime payments is denied.  Both parties' summary
judgment motions concerning whether the Garage Managers were
paid for the time taken to make the daily drop offs of cash
receipts are denied.  Plaintiffs' motion for summary judgment on
Richard Chapman being an employer under the relevant statutes is
granted.  And, finally, defendants' motion for dismissal of six
plaintiffs on the ground that they were not employed during the
notice period is denied without prejudice to renewal after GMC

provides plaintiffs' counsel with documentary confirmation of
the dates of employment for these six employees.

     SO ORDERED:

Dated:    New York, New York
           August 26, 2011

                                                  DENISE COTE
                        United States District Judge