```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   HENRY MCLEAN and EDWARD RIVERA,
    and LUIS RAMIREZ,
4
                    Plaintiffs,
5
                v.                      10 Civ. 3950 (DLC)
6                                       09 Civ. 9325 (DLC)
    GARAGE MANAGEMENT CORP., et al.,
7                                       Telephone Conference
                    Defendants.
8
    ------------------------------x
9
                                        New York, N.Y.
10                                      April 4, 2012
                                        1:10 p.m.
11
    Before:
12
            HON. DENISE COTE
13
                                        District Judge
14

15
            APPEARANCES
16

17
    KAHN OPTON LLP
18      Attorneys for 10 Civ. 3950 Plaintiffs
    BY:  STEPHEN H. KAHN
19

20  LAW OFFICE OF JUSTIN A. ZELLER, P.C.
        Attorneys for 09 Civ. 9325 Plaintiffs
21  BY:  BRANDON D. SHERR

22
    LITTLER MENDELSON
23      Attorneys for Defendants
    BY:  A. MICHAEL WEBER
24      MICHAEL PAPPAS
        ELIAS KAHN
25      NAVEEN KABIR
```

1              (Case called)

2              THE COURT:  Good afternoon, counsel.  I have you on

3    the speakerphone because I have a court reporter and my law

4    clerk with me.  Mr. Kahn, you're on the phone?

5              MR. S. KAHN:  Yes, your Honor.

6              THE COURT:  I guess I should ask Mr. Sherr, are you on

7    the phone?

8              MR. SHERR:  Yes, your Honor.

9              THE COURT:  Mr. Weber, are you on the phone?

10             MR. WEBER:  Yes, your Honor.

11             THE COURT:  Also for the defendants, Mr. Pappas, are

12   you on the phone?

13             MR. PAPPAS:  Yes, your Honor.

14             THE COURT:  Mr. Kahn.

15             MR. E. KAHN:  Yes, your Honor.

16             MR. WEBER:  The second Mr. Kahn.  I do apologize.

17             THE COURT:  Mr. Kahn?

18             MR. E. KAHN:  Yes, your Honor.

19             THE COURT:  Ms. Kabir?

20             MS. KABIR:  Yes, your Honor.

21             THE COURT:  Thank you so much.  I'm going to ask that

22   we not interrupt each other and when we begin speaking we

23   identify ourselves by name so that the record is clear.

24             I want to begin by thanking you each for making

25   yourselves available on short notice for this conference call.

1    I have had a chance to look at the pretrial order submissions

2    that you provided in anticipation of our April 18th trial.  I

3    have some observations to make based on my review of those

4    materials that I think would be helpful to counsel and help us

5    all prepare and organize our lives going forward.

6            Before I share that with you, I want to put a little

7    background on the record.  We had several telephone conferences

8    after 5 o'clock and without the assistance of a court reporter,

9    so I think it might be helpful in a very brief way to describe

10    how we got to this current point.

11            One of the recent disputes that we have been working

12    through is the dispute between the parties as to whether or not

13    the payroll records or the time cards would be used in this

14    case to calculate any overtime due and owing to the plaintiffs.

15    I permitted the plaintiffs to take some limited discovery in

16    order to try to flesh out any argument that they would like to

17    make to me with respect to prejudice by having at this late

18    date to rely on the time cards as opposed to the payroll

19    records for the calculation of the hours worked.

20            After that discovery period, I heard from the parties

21    and decided that the plaintiffs had not shown sufficient

22    prejudice to preclude the defendants from offering at this

23    trial the time cards as evidence of the actual hours worked by

24    each of the garage managers.

25            But given the fact that the defendants had not made

4

their position clear during the period of fact discovery, and
indeed during fact discovery had represented that it was the
payroll records that would accurately reflect the hours worked,
I placed the burden on the defendants to show that the time
cards were the more accurate record of the hours each garage
manager worked.  That is, they would have that burden at trial.
I issued an order, and you made your pretrial order submissions
in reliance on those discussions and rulings.

        Then what happened is I got the pretrial order
documents.  Included among those documents were 12 affidavits
from various plaintiffs in support of their claim that they
should be compensated for working off the clock to make drops
of cash in connection with their daily or weekly work as garage
managers.  In each of those affidavits, those 12 plaintiffs, in
effect, represent that their time cards are the accurate
recitation of the hours worked and that the additional time
spent making these dropoffs should also be compensated.

        There is, of course, an underlying tension between the
plaintiffs' assertions in this case.  The assertion that the
payroll records reflect the accurate hours worked for each
garage manager is one kind of assertion.  The assertion that
garage managers were not adequately compensated for the drops
they made of cash on each workday depends, as the plaintiffs
are intending to show it, on a different kind of assertion,
that is, that they made these drops after they had left the

5

workplace each day as reflected in their time card records.

I looked beyond the 12 affidavits to the list of plaintiffs who the plaintiffs indicate will be testifying live at this trial. There are four of them. One of them, Mr. Granjeda, also is one of the 12 with an affidavit. He is representing that his time cards accurately reflect his hours worked. Two others who the plaintiffs intend to call live, McLean and Ramirez, have deposition excerpts provided by the plaintiffs as part of their pretrial order materials. In those deposition excerpts, these two plaintiffs also assert that the time card records are accurate.

That leaves only one plaintiff that the plaintiffs have listed in their pretrial order documents that they intend to call at this trial. For Mr. Toogood I have no affidavit. I do have some deposition excerpts that the plaintiffs have provided. Those excerpts do not make clear whether or not he believes the time cards were the more accurate reflection of the hours worked.

Of course, the depositions of the plaintiffs were not conducted in a way that required them necessarily to take a position on the payroll records versus the time cards issue, because counsel didn't necessarily understand that that was going to be disputed at the time the depositions were taken. So, I appreciate that.

Let me move ahead, then, with how I know understand

6

 1    the case based on these pretrial order documents.

 2              With respect to the presentation of the plaintiff's

 3    case as reflected in the pretrial order, the plaintiffs are

 4    largely, if not entirely, conceding that the time cards

 5    accurately reflect the hours worked.  They are making that

 6    admission in the context of pursuing a claim that the time

 7    cards do not capture the hours or the minutes spent after

 8    plaintiff left the workplace in order to make the drop of cash.

 9              I think we have really made a lot of progress actually

10    in cutting through these issues.  I'm going to propose that the

11    trial on the 18th be a very narrow one.  We only have one

12    witness, Mr. Kamm, who has been identified to testify live on

13    the issue of willfulness.  Everything else is being submitted

14    through deposition testimony.  I think we should try the

15    willfulness good faith case on April 18th.

16              At this point I think I have to assume and should

17    assume that the time cards are the accurate reflection of the

18    hours worked.  I'm going to deny the defendants' application to

19    decertify the class.  It's untimely and not warranted, for

20    reasons I'll explain on April 18th.  I'm going to deny the

21    application of the plaintiffs to base any decision on the drop

22    box claim based on a representative sample.  I'm going to

23    require that each plaintiff show the extent to which they are

24    entitled to an overtime calculation based on hours worked

25    beyond those reflected in their time cards.

1           I'm going to ask the parties to work with Defendants'

2   Exhibit 4D, as in David, which is reflected in their exhibit

3   lists or exhibits under tab 15.  I found that a very helpful

4   chart or series of charts that set out in great detail for each

5   plaintiff where the dropoff location was for their garage,

6   whether it was on the premises, at another garage, or at a

7   bank, and the distance between the garage at which they worked

8   and that drop box location.

9           I am going to apply a de minimis standard besides the

10  Reich case that the defendants cite, which can be found at 45

11  F.3d 646.  I also want to bring to counsel's attention the

12  Singh case against the City of New York, 524 F.3d 361.

13  Applying that law, I'm going to ask the plaintiffs to look

14  carefully at Exhibit 4D and identify to the defendants which of

15  the plaintiffs have non de minimis drop box claims.  The

16  defendants point out that in some of the depositions plaintiffs

17  have already admitted that they were not necessarily the person

18  to make the drops of cash, that they had someone else who was

19  working with them make it, at least on occasion.

20          In any event, it is not clear to me that we need a

21  trial on the drop box claims.  I'm not sure how many plaintiffs

22  are going to have non de minimis claims, and it is not clear to

23  me that any limited number of plaintiffs who would have non de

24  minimis claims can't settle those claims either through direct

25  negotiations between the parties or with the assistance of

1    Magistrate Judge Gorenstein.

2          I want to work out a schedule here for the plaintiffs

3    to look at this Exhibit 4D with care and notify the defendants

4    of any individual plaintiff who has a non de minimis claim.

5    I'm going to suggest next week, by April 10th.  Mr. Kahn, is

6    that agreeable as a schedule?

7          MR. S. KAHN:  Yes, your Honor, that is.  I would like

8    to be heard on the time card issue if the appropriate moment.

9          THE COURT:  OK.  And I'd like the parties, please, to

10   contact Magistrate Judge Gorenstein this afternoon.  He has

11   time before our trial date of April 18th.  I want you to meet

12   and confer and try to resolve this case on your own.  If you

13   can't, I want you to see Magistrate Judge Gorenstein before the

14   18th to try to settle the case with his assistance, if you are

15   unable to settle it on your own.  Please contact his chambers

16   this afternoon to arrange for a date before the 18th to see

17   him.

18         I want counsel, please, to leave a message, morning,

19   noon, or night, with chambers if you do settle this case and a

20   hearing is unnecessary or a trial on the 18th, because I have

21   other matters I can turn my attention to.  I'll reserve the

22   morning of April 18th to try the willfulness/good faith case.

23   I hope to have some rulings on your legal issues for you if you

24   haven't settled them by then.  I noticed a number of legal

25   disputes in your pretrial order papers.  But I'm not planning

1    to take additional damage testimony on the 18th.

2        Let me turn to the parties and give you each and

3    opportunity to be heard.  Mr. Kahn, briefly.

4        MR. S. KAHN:  Yes, your Honor.  Plaintiffs are by no

5    means conceding that the time cards are the accurate record of

6    the hours worked.  As a matter of fact, the more we prepare for

7    trial, the less convinced we are of that fact.  These

8    affidavits were all prepared, your Honor, before this time card

9    issue, before your Honor had ruled that defendants would be

10   permitted to put time card evidence in.  I think your Honor is,

11   with all due respect, reading much too much in the testimony of

12   these affidavits with regard to time cards.

13       All these affidavits say with regard to time cards is

14   we punched out and we kept working.  There is nothing in any of

15   these affidavits that say these time cards accurately reflect

16   all our work or these time cards accurately reflect all of our

17   work except for what we sometimes do or when we always do depot

18   drops.

19       I think your Honor has read much too much into these

20   time cards.  The time cards are not the accurate records,

21   Judge.  They certainly weren't prepared with this question in

22   anybody's mind, your Honor.  So I would strongly object to

23   being denied the right to challenge the time card evidence.

24       THE COURT:  Let me read one to you, Mr. Granjeda's,

25   paragraph 3.

1              MR. S. KAHN:  May I have a moment to turn to it.

2              THE COURT:  "As a garage manager, at the beginning and

3    end of every workday I punched a time card on a time clock in

4    my garage.  However, after I punched off the time card each

5    workday, I was required to bring the daily paperwork and cash

6    from the parking garage where I worked to the GMC depot that

7    was closest to my garage."

8              Those are facts.  This was submitted to me with a

9    pretrial order long after my ruling and the parties' debate

10   about this time cards versus payroll record dispute.  These

11   facts are not going to change.  They are the facts.  They have

12   sworn to them under oath.  They are affidavits and

13   declarations.

14             I have to say, Mr. Kahn, you have been a very

15   diligent, resourceful, creative, strong advocate for your

16   clients, but the facts are the facts.  We are all engaged here

17   in a search for the truth.  You cannot have 12 affiants and

18   however many deponents now spend a lot of time dancing around

19   their prior statements and trying to take them back.

20             MR. S. KAHN:  Your Honor, Mr. Granjeda, who happens to

21   be listed as a trial witness, certainly did not mean that he

22   does no tasks before he punches his time card.  His affidavit

23   was prepared on January 24th and, quite candidly, when I

24   submitted it, in no way did I construe Mr. Granjeda or any of

25   these affidavits to mean that --

1       The defendants' time card evidence is simply not

2 accurate, judge. I'm not trying to escape the truth. I'm

3 trying to get to the truth. I think to overconstrue these

4 affidavits that were prepared without any thought of addressing

5 this particular issue would not be fair at this point in the

6 litigation. I think, Judge, you will get to the wrong result

7 if you don't listen to the evidence with regard to the time

8 cards versus the payroll.

9       THE COURT: Thank you very much, Mr. Kahn. I'm hoping

10 that you will reflect on our conversation today and come to a

11 different conclusion. You have all your rights to a full trial

12 for each of the plaintiffs' claims here. But I am reversing my

13 ruling with respect to who has the burden of showing that the

14 payroll records are the more accurate reflection of the hours

15 worked.

16       From this point on, it will be assumed for each

17 individual plaintiff that their time cards accurately reflect

18 the hours they worked within each garage. It will be each

19 individual plaintiff's burden, if they wish to demonstrate it,

20 to show that the payroll records more accurately reflect the

21 hours worked.

22       Therefore, based on the record as it now stands, I

23 will be calculating overtime due and owing each plaintiff based

24 on the records created by their time cards plus any individual

25 minutes that should be assessed because of the drop box claim

1     that I find for any individual plaintiff.  That is my ruling.

2          MR. S. KAHN:  May I respond, your Honor?

3          THE COURT:  No.  Mr. Weber, did you have anything you

4     should to say briefly?

5          MR. WEBER:  No, your Honor.

6          THE COURT:  Mr. Kahn, I really don't want to extend

7     this discussion.  I want to give you a chance to reflect.  You

8     will have a full opportunity to be heard at the appropriate

9     time.  I think more is accomplished by reflecting on what I

10    have said today than continuing this conference.

11         To make clear what the parties are going to be doing,

12    you're going to be contacting Magistrate Judge Gorenstein this

13    afternoon to arrange for a settlement conference under his

14    supervision before April 18th.  Plaintiffs are going to be

15    advising defense counsel no later than April 10th of any

16    plaintiff who has a non de minimis claim with respect to the

17    dropoff issue.  And our trial on April 18th will be addressed

18    to the scienter issue only, the good faith and willfulness of

19    the defendants.

20         MR. S. KAHN:  Your Honor, am I not to be permitted to

21    challenge the authenticity and the reliability of the time

22    cards, and I'm not permitted to challenge reliability of the

23    summary of time cards?  This Mr. Stephen Kahn, I'm so sorry.

24         THE COURT:  Mr. Kahn, if you have any errors to point

25    out to the defendants with respect to their calculation of the

1    hours worked by an individual plaintiff based on the time

2    cards, the time to do that first and foremost is in informal

3    discussions with defense counsel.  If there is an error in

4    calculation or an absence of time cards for a week, these are

5    things that you should be able to resolve together without

6    litigating it at a trial.

7            With respect to the issue of whether it is time cards

8    versus payroll records which more accurately reflect a garage

9    manager's hours of work, we'll discuss that further.  I'm not

10   going to take evidence on it on April 18th.

11           I am hopeful that you will reflect on what I have said

12   here and settle this case with the help if necessary of

13   Magistrate Judge Gorenstein.  Everybody has put a lot of time

14   and energy into this.  Counsel's fees are extraordinarily large

15   in this case, I'm sure, on both sides already.

16           If necessary, I will hear every plaintiff and make an

17   individualized determination based on the hours worked and the

18   drop box issue and any other factual issue to calculate

19   damages.  But whether that is the way, on reflection, that each

20   of the individual plaintiffs wants to or should proceed I'd

21   like you to think long and hard about before you ask me to do

22   that.  I'll hear you further on April 18th.

23           MR. S. KAHN:  Thank you, Judge.

24           THE COURT:  Thank you, counsel.

25           (Adjourned)